[No. B042169. Second Dist., Div. Three. July 23, 1990.]

ALICIA T., a Minor, etc., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Benjamin P. Wasserman for Plaintiffs and Appellants.

Morris, Polich & Purdy, Robert S. Wolfe, Douglas J. Collodel and Beth A. Kahn for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants Josie T., Al T. and Alicia T. (Alicia), a minor by her guardian ad litem, Josie T. (collectively, the T. family) appeal the judgment of dismissal entered in favor of defendants and respondents County of Los Angeles (the County), Clara Dodge (Dodge) and Edith Bishop (Bishop) (collectively, the defendants or the County).

Because Dodge and Bishop, social workers employed by the County, enjoy absolute immunity in the investigation of child abuse and the instigation of dependency proceedings, the trial court properly sustained the County's general demurrer without leave to amend. We therefore affirm the judgment.

However, because the briefs filed by counsel for the T. family contain unreasonable violations of the court rules, we assess sanctions against counsel, payable to the clerk of this court, in the amount of $750 to discourage similar violations in the future.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The T. family's third amended complaint asserts that on or about June 21, 1985, Josie T. took her daughter, Alicia, born July 8, 1981, to Dominguez Valley Hospital (DVH) emergency room because she had a vaginal infection. Medical personnel at DVH notified the Los Angeles County Sheriff's Department that Alicia possibly had been the victim of molestation.

Josie T. advised the personnel at DVH that Alicia previously had been misdiagnosed as the victim of molestation after a similar infection two years before. DVH personnel advised Josie T. that Alicia should be examined by a group of doctors which specializes in child abuse trauma known as a " 'SCAT' " team.

As a result of this recommendation, a deputy sheriff took Alicia to Martin Luther King Hospital (MLKH) for such an examination. However, Alicia was not examined by a SCAT team at MLKH but by a physician, Dr. Nguyen, who the T. family allege was not qualified to render an opinion on whether Alicia had been abused, and who erroneously concluded Alicia had been sexually molested.

The third amended complaint claims, as a result of the County's failure to submit Alicia to examination by a qualified physician, the County and its social workers, Dodge and Bishop, "without probable cause or reasonable suspicion removed her from the custody of her parents, and did so absent sufficient evidence of her status under Welfare and Institutions Code

---

[1] The briefs filed by the T. family did not assist this court to gain an understanding of the case. Rather, the T. family's briefs confused and obfuscated the factual and legal bases upon which this case is before us. As a result, the justices of this court had to review the clerk's and reporter's transcripts to obtain information necessary to our determination; there are *no* references in the opening brief to the record as required by California Rules of Court. Even this effort was hampered by the lack of clarity in the pleading contained in the record on appeal. The third amended complaint indicates this case involves the assertedly tortious removal of Alicia from parental custody based upon suspicion of abuse, but it nowhere states exactly what it is that Dodge and Bishop are alleged to have done.

Although Dodge and Bishop are identified as social workers employed by the County, it is not clear whether they investigated the allegations of abuse, instigated the dependency proceeding, placed Alicia in foster care, or merely counseled Alicia while she was in foster care. The record nowhere indicates, except by tangential reference to the Welfare and Institutions Code, that dependency proceedings in fact were ever instituted.

Therefore, we have assumed for the purposes of this appeal that Dodge and Bishop were involved in each phase of Alicia's detention, and that dependency court proceedings were instituted within 48 hours of Alicia's detention as required by Welfare and Institutions Code section 313, subdivision (a). Our inference in this regard is supported by statements of counsel at the hearing on the demurrer which indicate the juvenile court released Alicia after the T. family presented evidence which indicated she had not been abused.

[s]ection 300." Alicia was placed in a foster home from June 22, 1985, until August 8, 1985.

The subject complaint further asserts the defendants "lacked probable cause for believing that [Alicia] was an abused minor within the ambit of Welfare and Institutions Code [s]ection 300[,] [subdivision] (d), which gives the Juvenile Court authority over abused, neglected minors."[2]

The third amended complaint states that on June 28, 1985, and July 2, 1985, another physician correctly concluded Alicia had not been the victim of molestation.

In the controlling pleading the T. family prays for damages arising out of causes of action for violation of their civil rights, false imprisonment, and negligent and intentional infliction of emotional distress.[3] Specifically, the T. family alleges the County failed to have Alicia examined by qualified doctors and failed to return her to the custody of her parents after a reasonable length of time had passed and the defendants knew, or should have known, that Alicia had not been examined by a qualified physician.

The third amended complaint states the County had no credible evidence upon which to justify removal of Alicia from the custody of her parents and had Alicia been examined properly by a "SCAT" team at MLKH, she would have been released immediately. They conclude the County unlawfully removed Alicia from the custody of her parents and acted on "incorrect, unsubstantiated, and insufficient information and therefore lacked probable cause . . . ."

The County demurred on the grounds the civil rights causes of action were barred by the statute of limitations and by the absolute and qualified immunity provided the County and social workers in the investigation of child abuse and the instigation of child protection proceedings. The County also urged the trial court to dismiss the remaining causes of action for false imprisonment and negligent and intentional infliction of emotional distress

---

[2] At the time of the instant dependency proceeding, Welfare and Institutions Code section 300 stated any person under the age of 18 years may be adjudged a dependent child of the juvenile court if his or her "home is an unfit place . . . by reason of neglect, cruelty, depravity, or physical abuse[.]" (Former Welf. & Inst. Code, § 300, subd. (d); Stats. 1976, ch. 1068, § 6, p. 4759.)

[3] The third amended complaint also names the Los Angeles County Sheriff's Department, three individual deputies sheriff and Dr. Nguyen as defendants. An earlier order of the trial court sustained a demurrer without leave to amend as to the individual deputies sheriff, and the T. family has not appealed that ruling. It appears the T. family has not prosecuted the action as against Dr. Nguyen.

on the basis of the absolute immunity provided in Government Code section 820.2.

The trial court sustained the County's demurrer on all grounds stated in the moving papers and ordered the action dismissed without leave to amend. The trial court entered judgment in favor of the County, Dodge and Bishop. This appeal followed.

## CONTENTIONS

The T. family concedes the personnel at DVH properly reported the suspicion of abuse to the sheriff's department. However, they contend the County negligently removed Alicia from the custody of her parents in reliance upon the misdiagnosis of two unqualified physicians and unreasonably held her in protective custody without expert evidence she had been abused. They assert the County is entitled to qualified, but not absolute, immunity for this conduct.

The County counters that the trial court properly sustained the demurrer on each of the three grounds stated in their moving papers.

Because we agree the defendants enjoy absolute immunity from liability arising out of investigation of child abuse and instigation of dependency proceedings, we need not address whether the T. family failed to file their complaint timely or whether the trial court properly sustained the demurrer on the basis of qualified immunity.

## DISCUSSION

1. *Standard of review.*

■ "In reviewing the sufficiency of a complaint against a general demurrer, . . . '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of law . . . . [Citation.] We also consider matters which may be judicially noticed.' [Citation.] . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

*2. The County and its employees are entitled to absolute immunity from liability for violations of civil rights under 42 United States Code section 1983 in the investigation of child abuse charges.*

The T. family concedes the County and its employees enjoy some form of immunity relative to the investigation of reports of child abuse. However, they claim the County is insulated only by qualified immunity.

The County insists the law clearly provides absolute immunity for the conduct in issue here.

■ "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official. [Citation.]" (*Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 815 [73 L.Ed.2d 396, 408, 102 S.Ct. 2727].)

■ "Qualified immunity shields only that conduct not violative of clearly established constitutional rights of which a reasonable person would have known. Absolute immunity, in contrast, precludes any action for damages, so long as the challenged conduct falls within the scope of the immunity." (*Austin* v. *Borel* (5th Cir. 1987) 830 F.2d 1356, 1358, fn. omitted.)

*a. The applicable law of immunity from liability for 42 United States Code section 1983 claims.*

■ 42 United States Code section 1983 (section 1983) provides: "Every person" who acts under color of state law to deprive a person of a constitutional right shall be answerable to that person for damages.

Because Congress intended the remedy provided by section 1983 " 'as a means to provide at least indirect federal control over the unconstitutional acts of state officials' " (*Ngiraingas* v. *Sanchez* (1990) 495 U.S. __, __ [109 L.Ed.2d 163, 172, 110 S.Ct. 1737]), state courts must look to federal law to determine whether an individual is to be accorded immunity from such liability. "[T]he purposes underlying section 1983 . . . may not be frustrated by state substantive limitations . . . ." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 841 [129 Cal.Rptr. 453, 548 P.2d 1125].)

■ The substantive rules to be applied in section 1983 claims heard in state courts "include the elements necessary for the prima facie section 1983 cause of action and damages, as well as rules governing absolute and qualified immunity. [Citation.]" (*Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 503 [204 Cal.Rptr. 770].)

■ The United States Supreme Court has recognized common law immunities are available to protect public officials from section 1983 claims

but has not addressed whether a social worker's function of investigating child abuse reports and instigating dependency proceedings falls within the absolute immunity of a prosecutor (*Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984]), or the qualified immunity of a police officer (*Pierson* v. *Ray* (1967) 386 U.S. 547, 555 [18 L.Ed.2d 288, 295, 87 S.Ct. 1213]).

Cases decided by lower federal courts have split on the issue. Those which have found social workers entitled to absolute immunity in connection with the investigation of abuse and initiation of dependency proceedings include: *Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, 1157; *Malachowski* v. *City of Keene* (1st Cir. 1986) 787 F.2d 704, 712 [instigation of delinquency proceedings]; *Mazor* v. *Shelton* (N.D.Cal. 1986) 637 F.Supp. 330, 335; *Fogle* v. *Benton County SCAN* (W.D.Ark. 1987) 665 F.Supp. 729, 733-734; and *Whelehan* v. *County of Monroe* (W.D.N.Y. 1983) 558 F.Supp. 1093, 1098.

Another line of federal cases has accorded social workers engaged in these tasks only qualified immunity. These cases include: *Hodorowski* v. *Ray* (5th Cir. 1988) 844 F.2d 1210, 1216; *Austin, supra,* 830 F.2d at pages 1356, 1363; *Robison* v. *Via* (2d Cir. 1987) 821 F.2d 913, 920; *Doe* v. *Conn. Dept. of Children & Youth Services* (D.Conn. 1989) 712 F.Supp. 277, 280-282. These cases hold qualified immunity strikes a better balance between the interests of the individual and interests of the state by protecting all but plainly incompetent officials or those who knowingly violate the law.

■ In the absence of a controlling United States Supreme Court decision on a federal question, this court is free to adopt one of the divergent lines of authority. " '[T]he decisions of the lower federal courts, although entitled to great weight, are not binding on state courts. "[T]he decisions of the lower federal courts on federal questions are merely persuasive . . . . Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law." [Citations.]' ([9 Witkin, Cal. Procedure (3d ed. 1985) Appeal,] § 780, p. 751.) Where the federal circuits are in conflict, the authority of the Ninth Circuit (which decides appeals from the federal courts in California) is entitled to no greater weight than decisions from other circuits. [Citations.] '[W]here there is more than one appellate court decision, and such appellate decisions are in conflict . . . the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions.' (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 456 . . . .)" (*Elliott* v. *Albright* (1989) 209 Cal.App.3d 1028, 1034 [257 Cal.Rptr. 762].)

■ *Imbler* extended absolute immunity to prosecutors from section 1983 suits to protect them from harassment and to enable them to maintain

their independence. The high court noted it was the function of the prosecutor "in initiating . . . and in presenting the State's case" that merited protection (*Imbler, supra*, 424 U.S. at p. 431 [47 L.Ed.2d at p. 144]), not the office or status of prosecutor.

We believe the better reasoned cases are those which draw an analogy between the function of a social worker and the function of a prosecutor and, based thereon, grant social workers absolute immunity from liability growing out of their important societal function.

b. *Application here.*

The third amended complaint indicates the County removed Alicia from her home and prevented her return without sufficient probable cause. We have assumed, as discussed more fully in footnote 1, *ante*, the County and its social workers instituted dependency proceedings pursuant to the Welfare and Institutions Code to protect Alicia from the suspected abuse.

The T. family attempts to attribute to Dodge and Bishop a broad range of activity beyond the instigation of dependency proceedings by asserting, in the opening brief and the reply brief, that the social workers also performed investigative tasks, offered counseling and established rules to regulate the conduct of members of the T. family. They assert "[t]he 'slight' judicial function that the defendants might have conducted was filing an [*sic*] dependency action to determine with whom Alicia might live. The defendants' conduct could not in any manner be associated with that of a state prosecutor who is always 'intimately associated with the judicial phase of the criminal process.' "

We disagree with the characterization of a social worker's function in the instigation of dependency court proceedings or the investigation of allegations of child abuse as a "slight" court related activity.

"Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit." (*Meyers v. Contra Costa County Dept. of Soc. Serv., supra*, 812 F.2d at p. 1157; *McMartin v.*

*Children's Institute International* (1989) 212 Cal.App.3d 1393, 1404-1405 [261 Cal.Rptr. 437].)

The only California case to address whether a governmental entity and its social workers should enjoy qualified or absolute immunity in this area reached the same conclusion. *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278 [260 Cal.Rptr. 645], examined claims of negligent investigation of abuse and removal of a minor from parental custody and the social worker's alleged failure to consider exculpatory evidence in deciding to take the minor into protective custody. Plaintiffs' complaint alleged negligence, false imprisonment and violations of section 1983.

In addition to allowing social workers absolute immunity because of their quasi-prosecutorial functions, the *Jenkins* court pointed out another serious societal concern. *Jenkins* stated: "Should we hold a state or social worker acting within the scope of his or her employment is not absolutely immune from suits arising from the voluntary intervention to protect a child, we would indirectly eliminate the protection afforded to children. The state's interest in preventing child abuse will be diminished due to fear of retaliatory suits. The state and its social workers would not take the child into custody until the inflicted injuries could be 'recorded' to meet the 'objectively reasonable' test of qualified immunity or until they obtain a court order which ensures absolute immunity. Such a result negates the purpose of child protective services by postponing prevention of further abuse to avoid liability." (*Jenkins, supra,* 212 Cal.App.3d at p. 287.)

We agree with the analysis of *Jenkins*. It is necessary to protect social workers in their vital work from the harassment of civil suits and to prevent any dilution of the protection afforded minors by the dependency provisions of the Welfare and Institutions Code. Therefore, social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings.

██ Because a local government may not be sued under section 1983 for an injury caused solely by its employees or agents (*Monell* v. *New York City Dept. of Soc. Sevr.* (1978) 436 U.S. 658, 694, [56 L.Ed.2d 611, 638, 98 S.Ct. 2018]), and the T. family has not alleged an "injury inflicted by the 'execution of a [County] policy or custom,'" (*Owens* v. *City of Independence* (1980) 445 U.S. 622, 657-658 [63 L.Ed.2d 673, 697, 100 S.Ct. 1398]), the T. family has failed to state a section 1983 cause of action against the County.

c. *The T. family's focus on events after commencement of the dependency proceeding does not alter the instant result.*

At oral argument, counsel for the T. family argued that whatever immunity the County may have enjoyed in the investigation and instigation of the dependency court proceeding did not insulate the subsequent failure to have Alicia timely examined by an expert in child abuse. They conclude her six-week detention is unreasonable and tortious in light of this failure. We disagree.

The County instituted the dependency proceeding based upon the diagnoses of two physicians, each of whom concluded Alicia had been abused. As discussed above, the social workers enjoyed absolute immunity in the investigation and instigation of this proceeding. This immunity must continue during the conduct of the juvenile court proceeding for the very same reasons that originally necessitated it. That is, termination of the social workers' immunity would chill the quasi-prosecutorial function of that office and diminish the protections available to minor children just as if the immunity had been withheld in the first instance.

Additionally, once the juvenile court commences a proceeding to adjudge whether the minor is a dependent child of the court, the absolute judicial immunity of the court itself is implied. (See, *Cleavinger* v. *Saxner* (1985) 474 U.S. 193, 199-200 [88 L.Ed.2d 507, 513, 106 S.Ct. 496]; *Stump* v. *Sparkman* (1978) 435 U.S. 349, 359-360 [55 L.Ed.2d 331, 340-341, 98 S.Ct. 1099]; *Pierson, supra,* 386 U.S. at pp. 553-555 [18 L.Ed.2d at pp. 294-295].) We therefore reject the T. family's argument in this regard.

3. *The County and its social workers are also absolutely immune under state law for claims of negligent and intentional conduct alleged in connection with a child abuse investigation.*

■ The County relies upon Government Code section 820.2 to defeat the liability asserted here by the T. family. That section provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his [or her] act or omission where the act or omission was the result of the exercise of the discretion vested in [the public employee], whether or not such discretion be abused."

The T. family seeks to avoid application of this section by arguing the investigative nature of a social worker's employment is ministerial and not discretionary. They conclude Government Code section 820.2 does not apply to such allegedly ministerial acts. We disagree with their characterization of a social worker's activity.

As evidenced by our agreement with the *Jenkins* court, and the analogy of a social worker's function to that of a prosecutor, the acts complained of by the T. family are discretionary, not ministerial. Indeed, it is the continuing exercise of this discretion in favor of the protection of minor children that motivates our decision to afford social workers absolute immunity. Thus, the T. family's objection to the application of the statutory immunity found in Government Code section 820.2 must fail.

■ *Jenkins* also found the immunity stated in Government Code section 821.6 similarly insulated social workers from liability for negligence. That section provides: "A public employee is not liable for injury caused by his [or her] instituting or prosecuting any judicial or administrative proceeding within the scope of his [or her] employment, even if he [or she] acts maliciously and without probable cause." (Gov. Code, § 821.6.)

*Jenkins* pointed out that although this section has been employed primarily in the setting of malicious prosecution actions, its directive is not limited to such cases. We find either or both of these sections insulate the County's social worker employees from liability.[4]

Because the County's social worker employees are absolutely immune from liability, the County is similarly immune. (*Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491, 496 [203 Cal.Rptr. 33]; Gov. Code, § 815.2.)

4. *The lawful protective custody of Alicia cannot constitute false imprisonment.*

■ Alicia's custody cannot be viewed as false imprisonment where the County and its social workers exercised the power of protective custody found in the Welfare and Institutions Code. (*Jenkins* v. *County of Orange, supra,* 212 Cal.App.3d at p. 285.)

---

[4]The T. family's reliance upon a case ordered not to be published underscores the lack of merit in their assertion that the immunity found in the Child Abuse Reporting Law (Pen. Code, § 11164 et seq.) is limited only to the act of reporting incidents of abuse and does not include investigative conduct. Moreover, two cases have held the act does afford absolute immunity, not only for reporting but also "for conduct giving rise to the obligation to report [child abuse], such as the collection of data, or the observation, examination, or treatment of the suspected victim or perpetrator of child abuse, performed in a professional capacity or within the scope of employment, as well as for the act of reporting." (*Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1223 [242 Cal.Rptr. 312]; *Storch* v. *Silverman* (1986) 186 Cal.App.3d 671 [231 Cal.Rptr. 27].)

5. *The third amended complaint will not support a cause of action for negligent misdiagnosis.*

In *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], our Supreme Court allowed a husband to state a cause of action against a physician who had misdiagnosed his spouse as suffering from a sexually transmitted disease. The T. family now attempts to bring this case within the holding of *Molien*. They claim that MLKH misdiagnosed Alicia as having been the victim of abuse and as having a sexually transmitted disease.

Putting aside the fact the third amended complaint does not assert misdiagnosis of a sexually transmitted disease as a basis for liability, any misdiagnosis occurred in the context of an investigation of child abuse for which the defendants enjoy absolute immunity as stated, *ante*. Therefore, the trial court properly sustained the County's demurrer to this theory of liability.

Similarly, the allegations of the third amended complaint cannot state a cause of action for negligent or intentional infliction of emotional distress in light of the defendants' absolute immunity.

6. *The T. family's counsel's unreasonable failure to comply with California Rules of Court merits an award of sanctions payable to the clerk of this court.*

"The Constitution of the State of California vests in the Judicial Council the power to 'adopt rules for court administration, practice and procedure, not inconsistent with statute.' (Cal. Const., art. VI, § 6.) The Rules of Court promulgated by the Judicial Council have the force of positive law and must be complied with provided they do not conflict with any act of the Legislature. [Citations.]" (*Villa* v. *Superior Court* (1981) 124 Cal.App.3d 1063, 1065 [177 Cal.Rptr. 752]; *In re Steve W.* (1990) 217 Cal.App.3d 10, 27 [265 Cal.Rptr. 650]; *Paul D.* v. *Superior Court* (1984) 158 Cal.App.3d 838, 841 [205 Cal.Rptr. 77].)

The specific violations of the court rules in issue include the addition of factual material in the opening brief respecting the T. family's damages which are not properly before this court. These matters include allegations that the defendants performed unwarranted vaginal examinations upon Alicia, misdiagnosed and treated her for gonorrhea, subjected her to " 'play therapy,' " and investigated Alicia's father and brothers for child abuse. The opening brief does not contain *any* citations to the record on

appeal and, most glaringly, relies extensively on a case our Supreme Court has ordered not to be published in the official reports.

We consider the failure to comply with these rules in the T. family's opening brief to be compounded and unreasonable when, after the respondents pointed out these errors, counsel for the T. family violated the same rules in the reply brief. Counsel again extensively cited the same case which had been ordered not to be published in the official reports, albeit with a caveat it was not being relied upon, and repeated the allegations of damages which were dehors the record. Indeed, the T. family's counsel cited the unpublished case eight times in the reply brief and discussed it for four pages.

The T. family's opening brief also failed to mention the *Jenkins* case. The County pointed out this omission in its brief, but the T. family's counsel continued to avoid addressing the effect of the *Jenkins* holding on this case and instead, continued to rely improperly on an unpublished case.

The clerk of this court advised counsel for both sides by letter dated May 10, 1990, that this court was considering the imposition of sanctions against counsel for the T. family for failure to comply with California Rules of Court, payable to the clerk of this court. The letter directs counsel to California Rules of Court, rule 13 (failure to confine the statement of the case to matters in the record on appeal), California Rules of Court, rule 15 (a) (failure to support statements of matters in the record by appropriate references to the record), and California Rules of Court, rule 977(a) (citation of a case which has been ordered depublished).

This court does not assess sanctions in a haphazard or spontaneous manner. In this instance, our purpose is to emphasize the substantial additional time required to craft an opinion when the court rules are ignored as flagrantly as they are herein. The public fisc is limited, and justices and support staff must carefully monitor and utilize their resources.

Sanctions against counsel, payable to the clerk of the court, have been imposed in numerous recent cases for prosecution of a frivolous appeal. (*Bach* v. *County of Butte* (1989) 215 Cal.App.3d 294, 312-313 [263 Cal.Rptr. 565]; *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 135-137 [260 Cal.Rptr. 369]; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581].) Although the appeal in this case cannot be viewed as frivolous, we believe sanctions are appropriate to deter future similar violations of the court rules.

California Rules of Court, rule 18, provides that when a brief fails to comply with the rules on briefs, i.e., California Rules of Court, rules 13

through 17, the defective briefs may be: (a) returned to counsel for correction and redeposited with the court within a specified time, (b) ordered stricken with leave to file a new brief within a specified time, or (c) considered as if properly prepared.

We have rejected these options because the violations in issue here involve more than the mere form of the brief. Counsel's refusal to desist in the citation of an opinion ordered not to be published and failure to address controlling published authority merits, in our view, a more severe sanction than those set forth in California Rules of Court, rule 18.

California Rules of Court, rule 26(a), in addition to authorizing sanctions for prosecution of a frivolous appeal, provides for the award of such penalties as the court may deem appropriate to discourage unreasonable violations of the court rules. California Rules of Court, rule 26(a), in pertinent part, provides: "[W]here any party . . . has been guilty of any . . . unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

We conducted a hearing after oral argument of this matter on the propriety of the award of sanctions. This court previously has estimated the average cost to process a civil appeal at a conservative $3,995. (*Young*, *supra*, 212 Cal.App.3d at p. 136, fn. 40.) Based upon that estimated cost and the hearing herein, we assess sanctions against Benjamin P. Wasserman, counsel for the T. family, of $750, payable forthwith to the clerk of this court. This sum is to compensate for the difference between the cost to process, review and decide this case had it been properly presented, and the cost to perform these tasks on the briefs filed.

### CONCLUSION

The County and its social workers enjoy absolute immunity from liability alleged to arise out of the investigation of child abuse and the instigation of dependency court proceedings. Because the protective custody of Alicia was authorized by law, it cannot constitute false imprisonment. The T. family's other asserted theories of recovery for negligent and intentional infliction of emotional distress similarly are barred by the defendants' absolute immunity. Counsel for the T. family's unreasonable violation of the court rules merits an award of sanctions in the amount of $750 to discourage similar conduct in the future.

## DISPOSITION

The judgment is affirmed. The T. family to bear costs on appeal. Benjamin P. Wasserman, counsel for the T. family, is ordered to pay sanctions of $750 forthwith to the clerk of this court.

Danielson, J., and Croskey, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 1990.