[No. D012893. Fourth Dist., Div. One. June 17, 1993.]

RONALD S., a Minor, etc., Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO, Defendant and Appellant.

COUNSEL

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, David Froman and Deborah Peterson-Lee, Deputy County Counsel, for Defendant and Appellant.

Dietrich & Gilmore and Thomas G. Gilmore for Plaintiff and Respondent.

OPINION

FROEHLICH, J.—The County of San Diego (County) appeals from a judgment in the sum of $850,000, rendered after jury verdict. The delicts of the County relate to its administration of the dependency status of the minor plaintiff, Ronald S. (Ronald).

The factual background of Ronald's unhappy life need be stated, for the purposes of our opinion, only in summary fashion. Ronald and his sister lost

their parents at an early age as the result of a murder/suicide. After an unsuccessful attempt at living arrangements with relatives, the children were declared dependents of the County. Following another period of foster home living the children were placed with Merlin and Karen Mundy (the Mundys). The Mundys eventually sought adoption of the children; the adoption was approved by the County, and it became final in January 1982.

The jury heard evidence that excessive corporal punishment of Ronald's sister started before the adoption became final. Shortly after the adoption, physical abuse of Ronald commenced. He ran away from home in June 1982, was found by the police department and returned home. Ronald again ran away on August 21, 1982, was again apprehended by the police, but this time was taken to Hillcrest Receiving Home with a recommendation to the Department of Social Services that a dependency petition be filed on his behalf. The department decided not to file a petition and instead returned Ronald to the Mundys' home.

Ronald again ran away from home in October 1982. Although Ronald was again returned to his home, concern by the director of the family stress center resulted in his eventual examination by a psychiatrist at a residential treatment center. Ronald then revealed a history of severe sexual abuse by his adoptive father. A medical examination of the then 12-year-old victim confirmed sodomization. Merlin Mundy pleaded guilty to oral copulation with a minor. A dependency petition was filed resulting in termination of the parental rights of the Mundys. A guardian ad litem was appointed for Ronald, and this lawsuit for personal injuries incurred by Ronald was filed, including the County as a defendant.

The jury's general verdict against the County was based upon a finding of negligence. ■■ ■■ The claims of negligence upon which the case was tried fall into three categories:[1] (1) that the County was negligent in the investigation and selection of the Mundys as adoptive parents; (2) that the

---

[1]We have experienced some difficulty in this case in identifying the precise basis for the theory of liability for negligence asserted against the County. Government Code section 815 provides that a "public entity is not liable for an injury," whether caused by the entity itself or by one of its employees, "[e]xcept as otherwise provided by statute." Thus, in California "all government tort liability must be based on statute." (*Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140].) In *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707 [230 Cal.Rptr. 823], for instance, a claim by a student at a public high school who had been injured by a third party on the campus was denied on the ground that there was no statutory ground for the cause of action. Admittedly, most actions against public agencies can be based upon the agency's employees' acts, since under Government Code section 820 government employees are liable for their own torts, and under Government Code section 815.2 the public entity is vicariously liable for its employees' torts committed within the scope of employment. In this case, however, there seemed to be no effort, at least

County was negligent in permitting the return of Ronald to the custody of the Mundys when it knew or should have known he was in danger, during his various periods of running away from home; (3) that the County was negligent in its transfer of Ronald's funds to the Mundys upon his adoption, which funds the Mundys subsequently converted to their own use.

While the County raises questions as to the existence of a duty of care, and as to the existence of proximate cause, there is no real dispute about the facts presented to the jury upon which a finding of negligence might have been made. The Mundys initially sought to adopt only Ronald, accepting his sister as an additional adoptee only at County's insistence. Pre-adoption reports concerning the children indicated potential problems in their adjustment, suggesting that any "potential adoptive family will need a relatively high tolerance for acting out . . . ." In response to a questionnaire the Mundys stated that they would find unacceptable a child who was emotionally unstable. Observations of the children with the Mundys by a social worker suggested a lack of interaction. Notwithstanding these negative signs, the adoption was approved.

The plaintiff's theory of negligence postadoption is based upon the County's failure to protect Ronald when his predicament came to its attention via the police detentions. Knowing of his damaged emotional state, it is contended that it was negligence for the County not to have made an earlier and more effective investigation of Ronald's situation, rather than simply and summarily returning him to an environment that should have been known, or suspected, by County personnel to be harmful to him.

Finally, the unconditional transfer of Ronald's funds to the Mundys is claimed to have put them in a position to appropriate the money, and Ronald asserts that the County should have taken steps to prevent such loss.

---

in the pre-adoptive allegations of negligence, to identify the specific negligent acts of any employee. The claims of negligence are framed in terms of the "County's" negligence. Respondent in supplemental briefing has pointed out a number of cases which refer to the negligence of a city or county, generally, without reference to the particular acts of its employees. (As an example of this somewhat loose phraseology, see *Johnson v. State of California* (1968) 69 Cal.2d 782, 786 [73 Cal.Rptr. 240, 447 P.2d 352]: ". . . the state owed a duty to inform Mrs. Johnson of any matter that its agents knew or should have known . . . .") Further, the treatment of the concept of "special relationship" as giving rise to a duty of care on the part of governmental agencies often conveniently sidesteps the citation of the statutory authority for public entity liability. (See the discussion in *Williams v. State of California* (1983) 34 Cal.3d 18, 22-23 [192 Cal.Rptr. 233, 664 P.2d 137].) After due consideration we have concluded that the "common law" of the "special relationship" basis for liability rests upon an assumption that if a duty is owed it is to be performed by some person, and failure of performance thus renders that person liable, and by virtue of section 815.2 also imposes liability upon the public entity. (See *Leger v. Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1460-1461 [249 Cal.Rptr. 688].) Accordingly, we proceed to examine the question of County negligence without undue attention to the discovery of a specific statute upon which it can be based, other than sections 815.2 and 820.

According all intendments to the determinations of the finder of fact, and indeed finding substantial evidence supporting the same, we must affirm the judgment unless it is founded on some legal error. The errors claimed by the County are (1) that the County had, as a matter of law, no duty of care to Ronald in the performance of its various transactions which affected his life, and (2) that even if it had such duty, and its negligent breach of the duty proximately resulted in damage to Ronald, it is immune from liability. Each of these contentions was rejected by the trial judge in various rulings during the trial, including motions *in limine*, requests for jury instructions and a ruling on the County's motion for judgment on the pleadings. ██ We agree with the trial court in terms of its determination of the question of duty,[2] but conclude the court erred in refusing to rule in the County's favor in terms of the applicability of immunity statutes. We find a jury's verdict of negligence based upon the lost funds to be sustainable, but must reverse and order a new trial on this issue because we cannot determine from the form of the general verdict what the jury's findings on this issue were.

### The Issue of Duty

A finding of negligence rests upon a determination that the actor has failed to perform a duty of care owed to the injured party. Ronald's injuries resulted from torts inflicted upon him by the Mundys. If the County is to be held responsible for this damage it must be found that the County had some obligation to control the Mundys, or to intervene or take some other action to prevent their abusive conduct. ██ Ordinarily, one person has no duty to control the conduct of another. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) Where a duty is imposed on otherwise unrelated parties it is based upon a finding of special facts which give rise to the determination that care should have been exercised, creating then an exception to the rule of lack of duty. This has generally been characterized as the existence of a "special relationship" between the person upon whom the duty is imposed and the one to whom it is owed.

It is not enough, early cases held, to find that careless conduct of the actor might, with reasonable foreseeability, give rise to eventual damage to some unknown and unidentified third party. A list of such situations is set forth in *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23]. In the *Stanley* case itself it was held that a vehicle owner had no duty to unknown third persons not to leave the ignition key in the vehicle, even though theft and subsequent

---

[2]The existence of a legal duty on the part of an actor to a class of persons including the plaintiff is a question of law to be determined by the court. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 748, p. 83.)

risk of negligent driving could be foreseen. (*Id.* at p. 66.) This was similar, the *Stanley* court recited, to other situations of acknowledged lack of duty, such as the loss to purchasers at a tax sale which would result from a computation error by the assessor (*Routh* v. *Quinn* (1942) 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]), or the damage incurred by individuals injured through a child's use of the parents' carelessly entrusted automobile (*Lane* v. *Bing* (1927) 202 Cal. 590 [262 P. 318]), or the injury to an invitee of the lessee of business premises resulting from inaction of the lessor, who knew of the dangerous condition (*Goodman* v. *Harris* (1953) 40 Cal.2d 254 [253 P.2d 447]).

Efforts by injured parties to pin liability on an otherwise unrelated entity, and particularly a governmental entity, have therefore focused on the identification of some "special relationship" between the parties which reasonably should alter the initial assumption of no duty. This "special relationship" was easily found in *Johnson* v. *State of California, supra,* 69 Cal.2d 782, 785, as owed by the California Youth Authority to Ina Mae Johnson, when the authority entrusted to her care as foster parent a wayward youth previously in its custody. The authority was under a duty, the court held, to warn Mrs. Johnson of the known homicidal tendencies of the youth. The relationship was established on the basis of the selection and placement by the authority, its knowledge of the dangerous history of the youth, and the foreseeable harm specifically to Mrs. Johnson if she remained unaware of same. (*Id.* at p. 786.)

*Tarasoff* v. *Regents of University of California* is a similar factual situation giving rise to the finding of a special relationship and a duty. When a psychiatrist knows that a mentally aberrant patient has threatened to kill a specific person, the foreseeability of damage to that person and the probable mitigation of such by the giving of a warning impose upon the psychiatrist the duty to warn. (*Tarasoff, supra,* 17 Cal.3d at p. 439.) A parallel duty was found in *Carpenter* v. *City of Los Angeles* (1991) 230 Cal.App.3d 923 [281 Cal.Rptr. 500], where the use of a witness by the city coupled with assurances to the witness that she was not in danger of harm by the criminal defendant created a "special relationship" such as to require a warning when the criminal threatened harm to the witness.

To be contrasted with these cases is *Williams* v. *State of California, supra,* 34 Cal.3d 18. *Williams* illustrates factual situations which do *not* give rise to a special relationship creating a duty of care. The negligence asserted in *Williams* was the failure by highway patrolmen to conduct an adequate investigation at the scene of an auto accident which injured the plaintiff, resulting in the loss of crucial evidence. In finding no duty on the part of the

patrolmen to the plaintiff, based upon the lack of any "special relationship" between them, the court emphasized the absence of characteristics which typically result in the creation of a "special relationship." The officers had not created the peril which damaged the plaintiff; they had taken no affirmative action which contributed to, increased or changed the risk; they had not voluntarily assumed a responsibility to protect the plaintiff; and there was no evidence the plaintiff had detrimentally relied on their services. (*Id.* at pp. 27, 28.)

■ Applying these standards to the facts of our case, we find ample basis for affirming the trial court's determination of the existence of a special relationship between the County and Ronald. As a dependent child Ronald's disposition was totally in the control of the County. If the County failed adequately to investigate the qualifications of proposed foster or adoptive parents, it was foreseeable that harm would come to Ronald. As in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 789 [221 Cal.Rptr. 840, 710 P.2d 907], where a bus driver was held to owe a duty to his passengers because they were confined in his bus and "wholly dependent upon the bus driver," here Ronald was wholly dependent upon the good offices of the County to supervise his placement.[3] Absent a defense based upon governmental immunity, therefore, we would affirm the judgment.[4]

---

[3]We distinguish *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929 [153 Cal.Rptr. 712] on the basis of the factual differences in the governmental tasks performed in that case as compared to this one. The cases might appear similar in that each dealt with the question of duty of the county adoption agency in placing a child for adoption. In *Smith*, however, the claim was negligence of the county in *failing* to place the plaintiff for adoption over a period of several years. The *Smith* court referred to the factors set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], including " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (69 Cal.2d at p. 113.)" (*Smith* v. *Alameda County Social Services Agency, supra*, at p. 936.) A principal factor relied upon by the *Smith* court was the difficulty of foreseeing, over a period of years, the potential harm which might result from a *failure* to achieve adoptive placement. The foreseeability of damage by the omission, through negligent investigation, to uncover facts which would lead to the conclusion that adoptive parents are not qualified, is much more easily identified.

[4]We do not mean to suggest that the "special relationship" between the County and Ronald continued after his adoption was completed. We have found that a special relationship existed between the County and Ronald during his period of dependency upon the County, primarily because he was, from both a practical and legal point of view, entirely within the County's control. After the adoption by the Mundys was completed he became practically and legally dependent upon them, in essentially the same position as had he been their natural child. (See 10 Witkin, Summary of Cal. Law, *supra*, Parent and Child, § 342, pp. 389-390.) The County's relationship to Ronald thereafter was the same as its relationship to any child and governed by

### The Existence of Immunity

■ Government Code[5] section 818.2 provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." In defining "law enforcement" for purposes of this section, *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374, 378 [161 Cal.Rptr. 799] stated that "to enforce a law normally means to compel obedience to the law by actual force, such as involuntary detention, arrest or punishment. [Citations.]" ■ Insofar as Ronald's claim of negligence related to his release to his parents after the several police detentions, we believe section 818.2 immunity to be applicable. Such release involved use of the County's coercive power over Ronald and the Mundys, and hence the decision to return Ronald would come, we believe, within the definition of "law enforcement."

■ In order to find immunity for the County's negligence in the adoption process, however, we must seek the broader provision of section 820.2: "[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Section 815.2 provides public entities with the same immunity given public employees.

■ The key phrase in this immunity provision is the denomination of the act in question as one which involves "the exercise of . . . discretion." The landmark case construing this phrase is *Johnson* v. *State of California, supra,* 69 Cal.2d 782. We referenced the facts of this case above, noting that the state had been found liable for failing to warn a foster parent of the homicidal tendencies of a youth placed in her home. The *Johnson* court noted that virtually all acts a governmental employee is called upon to perform involve some degree of choice. The mere existence of discretionary choice in the act to be performed, as no doubt existed in the decision whether to warn Mrs. Johnson of her ward's dangerous propensities, cannot bring the act within the immunity provision. Rather, immunity should attach to those decisions which involve "basic policy" choices which, because they constitute an exercise of governmental administration, should " 'remain beyond the range of judicial inquiry.' " (*Johnson, supra,* at p. 793, quoting 3 Davis, Administrative Law Treatise (1958) § 25.11, p. 484.)

---

the rules requiring special circumstances to exist in order to establish the "special relationship" creating the duty of care. (See *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319 [281 Cal.Rptr. 317].) Since we do not know which of the several theories of negligence was accepted by the jury, our search for a "special relationship" is satisfied if it is found during any of the periods of alleged negligence. Were the facts limited to actions by the County after the adoption had been completed we would have been unable to affirm a finding of special relationship.

[5]All statutory references are to the Government Code unless otherwise specified.

Elaborating on this thesis, the *Johnson* court stated: "Courts and commentators have . . . centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process." (*Johnson, supra,* 69 Cal.2d at p. 793, italics in original.)

 Applying the *Johnson* logic to this case leads inevitably, we believe, to the conclusion that the pre-adoption work of the social service employees of the County constituted discretionary activity protected by the immunity provision of section 820.2. The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity. The decisions made in the adoption process are by nature highly subjective. Whether a child is adoptable in a particular circumstance and whether the couple desiring to adopt the child will provide a proper home for the child have got to be decisions of a highly speculative nature. There is no way that the following of forms or rules or agency procedures could transmute this most subjective decisionmaking process into a ministerial act. Following the *Johnson* admonition to courts not to second-guess policy decisions of other branches of government, we opine that second-guessing adoption decisions, and imposing civil liability upon public servants when the decision turns out to be wrong, would severely interfere with and surely impede the proper workings of the responsible social service department.

*Smith* v. *Alameda County Social Services Agency, supra,* 90 Cal.App.3d 929, which held the adoption agency not liable for failing to place a child for adoption, was decided on the issue of duty rather than immunity. The reasoning of the case, which led to a conclusion of no duty, seems applicable, however, also to the question of whether the administration of adoptions is a discretionary process. As stated by that court: "We doubt that the proposed liability would reduce future harm. If anything, it would be more likely to impede the proper functioning of adoption agencies. It is doubtful that the liability here involved can be insured against, let alone insured at a reasonable cost. . . . Finances aside, we do not believe that the placement process or the children, foster parents and social workers involved in it would be helped by trying to reconstruct events that necessarily are heavily tinged by considerations of judgment, discretion and a host of personal factors—events that occurred long ago and over an extended period of time—and by passing judgment on these events in a courtroom. In short, we

view judicial intervention under these circumstances as neither useful nor workable." (*Id.* at p. 938.)

Before concluding our discussion on this point, however, we must deal with *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27]. *Elton* was a reversal of the sustaining of a demurrer on the ground that the county acts alleged in the complaint did not constitute "discretionary" acts within the meaning of section 820.2. The county negligence alleged in *Elton* was the improper certification of a foster home and the negligent placement of the minor plaintiff in the home, where she was battered and abused. *Elton* held that the initial decision to classify a child as a dependent child and to remove the child from her home might well be a basic policy decision warranting classification as "discretionary." However, the actual placement of the child in a foster home and the administration of her care therein do not, the *Elton* court concluded, rise to the level of policy decisions protectible by the statutory immunity. (3 Cal.App.3d at p. 1058.)

We find Elton to be a difficult decision. Selecting and certifying a foster home for care of dependent children seems to us to be an activity loaded with subjective determinations and fraught with major possibilities of an erroneous decision. It appears to us that foster home placement, like adoption placement, constitutes an activity of a co-equal branch of government, and that the discretionary decisions made in connection therewith should be deemed beyond the proper scope of court review. However, we need not (and do not) attempt a disapproval or retreat from our court's decision in *Elton*. *Elton* can be distinguished.

The maintenance of a child in a foster home involves an obligation of continued supervision by the County. The child remains a ward of the County. Much of what the County is obligated to do in terms of continued administration of the child's welfare undoubtedly constitutes simple and uncomplicated surveillance which reasonably could be characterized as ministerial. It is understandable, then, that a complaint which in general terms alleges damage from negligent management and supervision of the foster home could be deemed adequate to withstand a general demurrer.[6]

We review in this case not a ruling on demurrer but a judgment rendered after full trial. We know that the damage to Ronald occurred after the adoption by the Mundys had become final and at a time when supervision or surveillance of the Mundy household by the County was no longer possible.

---

[6]The allegation in *Elton* was that the probation department "placed numerous children, including the plaintiff, in the home of the Hortons and . . . did so carelessly and negligently place, supervise, entrust, control, maintain and care for the person of the minor plaintiff, that she was struck, battered[, etc.]". (*Elton* v. *County of Orange, supra,* 3 Cal.App.3d at p. 1056.)

The negligence under consideration, therefore, cannot be the failure of the County to perform ministerial overview of Ronald's living conditions; rather it must be the failure of the County to perform a complete and adequate investigation during the pre-adoption period, or perhaps it is contended that approval of the Mundys as adoptive parents was in itself a negligent determination. These activities, unlike those possibly within the scope of the *Elton* pleading, clearly fall within the ambit of discretionary action.

 We find, also, that immunity from liability for activities of the social workers and the County in processing the adoption is available under section 821.6, which provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Adoption proceedings are, of course, judicial in nature, commencing with a court petition (Civ. Code, § 226), requiring an administrative investigation and report (Civ. Code, § 226.2), and culminating in a judicial decree (Civ. Code, § 227). It has been held that section 821.6 provides complete immunity for social workers (and a county) for their actions taken to investigate, declare children dependents of the county, and cause their removal from parental control. (See *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278 [260 Cal.Rptr. 645]; *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869 [271 Cal.Rptr. 513].) The process of adoption is no less a judicial or administrative proceeding than is that utilized in dependency proceedings. We believe the immunity provided by section 821.6 is fully applicable to claims of negligence, as are made here, in the process of administering an adoption.

### Negligence in Loss of Money

At the outset of this opinion we noted that one of the grounds for negligence asserted against the County was its failure to safeguard Ronald's funds, which were turned over to the Mundys and subsequently converted. If, indeed, the County's negligent action led to a loss of the funds, we would be hard pressed to identify an immunity provision which would protect the County from liability—the handling of cash being an activity requiring only ministerial determinations and involving no discretion at all, and not being an integral part of the judicial or administrative proceedings pertaining to the adoption.

We review, therefore, the possible grounds upon which the jury may have concluded the County was negligent in the handling of Ronald's funds.[7] The facts are not in dispute. The funds were derived from insurance benefits or

---

[7]We are somewhat hampered in this review by virtue of the almost complete lack of briefing on the subject of the money, either by appellate or respondent. Since this claim of

social security receipts resulting from the death of the children's natural parents. The money was held by the County during the dependency of the children. After adopting the children, the Mundys demanded that the funds be transferred to them. The County did so transfer the funds after first receiving oral assurances (but nothing in writing) from Mr. Mundy that he would set up a trust fund for the benefit of the children.

It is indeed conceivable that a finder of fact would conclude this treatment of Ronald's funds to have been negligent. Even though the Mundys, following the adoption, were Ronald's legal parents with all the rights and prerogatives of natural parents, they were not necessarily thereby entitled to possession of Ronald's assets. Money being held for the benefit of a minor is properly distributed to or for the benefit of the minor only after a petition has been filed seeking court authorization (Prob. Code, § 3411) and an order has been made disposing of the funds (Prob. Code, § 3413). While a sum of money not exceeding $5,000 may be distributed to a minor's parents (Prob. Code, § 3413, subd. (d)), sums in excess of this amount are to be deposited in an account subject to withdrawal only by court authorization, transferred to a custodian under the California Uniform Transfers to Minors Act, or otherwise held in accordance with court order (Prob. Code, § 3413). The County in this case was suspicious of Mr. Mundy's intentions concerning the money. Even lacking such suspicion it had an obligation to follow the clear mandate of law as to the disposition of Ronald's funds. A jury verdict finding the County to have been negligent in administration of Ronald's funds would be, in our opinion, sustainable.

### Disposition

We find two of the three possible grounds for negligence and damages to have been improper, because as a matter of law we conclude the County to be immune from liability on such grounds, and we therefore must reverse the judgment. Since it is possible the jury utilized the third ground of negligence (loss of Ronald's funds) as a partial basis for its verdict, we must return the case for retrial. If the case is retried, however, the only theory of negligence to be presented to the jury will be the question of the County's negligence in administration of Ronald's funds.[8] Each party shall bear his or its own costs on appeal.

Kremer, P. J., concurred.

---

negligence *was* presented to the jury, and since it *could* have been a partial basis for the jury's assessment of liability and damages, we address the subject.

[8]Should this issue be the subject of retrial the court should, of course, instruct the jury as to the County's legal obligation respecting the disposition of Ronald's funds. No such instructions were given in the first trial and we wonder how the jury, if indeed it did, reached any logical conclusion as to the County's responsibility for the funds.

BENKE, J., Concurring.—

I

LIABILITY PROVIDED BY STATUTE

I agree with my colleagues that the County of San Diego's (County) relationship with Ronald S. prior to his adoption imposed upon the County a duty to protect Ronald from injury inflicted by Merlin Mundy. (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 785-786 [73 Cal.Rptr. 240, 447 P.2d 352]; see also *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319, 334 [281 Cal.Rptr. 317].)

I also agree that following Ronald's adoption by the Mundys, the County had the same relationship with Ronald it had with any other child. (See Civ. Code, § 221.74; *MacDonald* v. *State of California, supra,* 230 Cal.App.3d at p. 334.)

Nonetheless, I believe the majority errs in concluding that following the adoption, no new "special relationship" was created by the County's conduct. (See maj. opn., *ante,* p. 895, fn. 4.) In particular, I note the record is clear that on at least two occasions following his adoption Ronald was held at the Hillcrest Receiving Home and the County regained complete physical custody over him. In my view while Ronald was in the receiving home, the County again had practical and legal control over him sufficient to support a duty to protect him from further harm. (See *Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 713 [230 Cal.Rptr. 823]; see also *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983, 987-988 [194 Cal.Rptr. 553].)

My disagreement over the temporal scope of the County's duty, however, is not my major point of departure from the majority's analysis. I believe the majority errs in resolving the bulk of Ronald's claims by finding the County's conduct was immune under Government Code section 820.2 without more thoroughly examining what, if any, statutory violation supports the County's liability. This failure leads the majority into unnecessary conflict with our prior holding in *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053, 1058 [84 Cal.Rptr. 27] (*Elton*).

As the majority acknowledges, in California "all government tort liability must be based on statute." (*Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140]; see also Gov. Code, § 815.) The majority relieves Ronald—and any number of other plaintiffs with claims against governmental entities—of the burden of identifying a specific statutory basis for his claims by assuming that if a duty to act affirmatively has been breached by a governmental entity—in this case, the County—there will

always be an individual within the entity—a County employee—who has breached the same duty. (See fn. 1, maj. opn., *ante*, pp. 891-892.) Given this assumption, the majority concludes governmental agencies will therefore always be subject to statutory liability under Government Code section 815.2. (See fn. 1, maj. opn., *ante*, pp. 891-892.)

I have considerable difficulty with the majority's reliance on Government Code section 815.2. Government Code section 815.2 imposes vicarious liability on an agency for injuries caused by an employee if the employee was acting within the scope of his employment and if the employee's "act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The majority has failed in this case to identify either by name or job classification an individual county employee who, during the pre-adoptive period, had a special relationship which would give rise to a duty to protect Ronald from Merlin Mundy and breached that duty.

For instance, in his briefs and at trial Ronald has pointed to the conduct of his adoptions worker, Sharon Katz. Ronald faults Katz for failing to properly review the Mundys' responses to questionnaires, for failing to conduct postplacement visits and for failing to take any action after learning the Mundys had discontinued Ronald's therapy.

However, as an individual, Katz did not have the practical and legal control over Ronald which would support existence of a duty to protect Ronald from Merlin Mundy. At most the record suggests Katz's responsibility was to conduct an appropriate investigation and make a recommendation to the department's placement committee. This role is far more circumscribed than that of the school principal and wrestling coach discussed in *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1460-1461 [249 Cal.Rptr. 688] (*Leger*), who had direct authority over students while they were in school.

In my view the only individuals in the pre-adoptive bureacracy who had the practical control over Ronald which is in any way analagous to the power of the school principal and coach discussed in *Leger* were two social workers, Grace Blasekowski and Marie Ebiner, both of whom expressed reservations to Katz about the proposed adoption by the Mundys. Because they expressed their reservations to the person responsible for review of the adoption, the social workers could hardly be found individually liable for any failure to act.

Having considered the roles of the individual County employees who participated in Ronald's case prior to his adoption, I am unwilling to assume

there must have been a single employee of the County who (1) had the level of control over Ronald which gave rise to a duty to act and (2) acted negligently. Rather, this record suggests to me that, given the myriad ways in which authority in government agencies may be distributed, it is entirely possible that while one employee within a governmental entity may have the practical power over a plaintiff which would create a special relationship, another employee who lacks such power actually causes a plaintiff's injury. In such a case, reliance on the vicarious liability provided by Government Code section 815.2 is unavailing because there is no single individual who, apart from the statute, can be held liable.

Unwilling as I am to rely on Government Code section 815.2, I turn briefly to Government Code section 815.6, which makes a governmental entity liable for failing to discharge a mandatory duty provided by an "enactment." A statute imposes a mandatory duty within the meaning of Government Code section 815.6 if the statute " '*is designed to protect against the risk of a particular kind of injury.*' [Citation.]" (*Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at p. 720.)

None of the child protection and dependency statutes Ronald relies on (see e.g. Welf. & Inst. Code, §§ 16100 et seq., 300 et seq.; *id.*, former § 8006; Civ. Code, § 224, subd. (n); Prob. Code, §§ 1501, 2104) are specifically designed to detect the likelihood a prospective adoptive parent will abuse a dependent child. Rather, these statutes require that the County provide a system of care and custody of children who have been abused or are otherwise dependent on the County for their care.

I also note the record here is replete with evidence of Katz's failure to meet the requirements of a number of County guidelines governing the adoption process. However, such internal guidelines do not meet the threshhold of an "enactment" within the meaning of Government Code section 815.6 (See *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 294-295 [217 Cal.Rptr. 450].)

In sum then with respect to the pre-adoptive period, rather than reaching the question of any immunity, I would reverse because, in this case, this plaintiff has failed to identify a statutory basis for liability.[1] (See *Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at pp. 722-723.)

---

[1]With respect to the postadoptive period, during which I believe the County also had a duty to act, I would find a statutory basis for liability under Government Code section 815.2. The record supports the conclusion that while Ronald was at Hillcrest Receiving Home, he was under the control of child protective services worker Ham, and that Ham acted negligently in releasing him to the Mundys. However, I also believe the County was immune under Government Code section 818.2, which protects entities from liability for failing to enforce

I recognize that, having substantially expanded the scope of statutory liability, my colleagues have attempted to avoid the impact of their expansion by creating a broad doctrine of statutory immunity in adoption cases. However, in the future our courts will confront governmental agencies, outside the adoption process, which have breached affirmative duties to act. The plaintiffs in these cases, unhindered by the broad adoption immunity created by the majority, are going to find the majority discussion of statutory liability of immense and, I believe, unwarranted assistance.

## II

### IMMUNITY

According to the majority, because there are a number of discretionary aspects in the adoption process, immunity attaches to each step within the process. While I confess there is a great deal of efficiency in the majority's approach in that it disposes of all adoption cases by making the entire adoption process immune from liability, I believe the efficiency comes at too dear a cost. More particularly, in my mind using the *duty* discussion in *Smith v. Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929 [153 Cal.Rptr. 712] (*Smith*) as a means of undermining, if not overruling, the *immunity* holding in *Elton, supra,* 3 Cal.App.3d 1053, is simply "too much of a stretch."

Discretionary immunity under Government Code section 820.2 turns on whether a plaintiff was injured by the basic policy decision of a coordinate branch of government, in which case immunity attaches, or whether the injury arose from a ministerial act, which is not immune. (*Johnson v. State of California, supra,* 69 Cal.2d at p. 797.) By its terms and by the majority's own admission, *Smith* is not an immunity case. Its holding is limited to its determination there is no compensable duty to find a permanent placement for a dependent child. (*Smith, supra,* 90 Cal.App.3d at pp. 937-938.) In rejecting the notion social service agencies may be found liable in tort when, in an individual case, they are unsuccessful in providing a permanent home, the *Smith* court's separation of powers discussion, which the majority relies upon, is helpful and persuasive. However, *Smith* in no way supports the principle that every step in the adoption process is immune from judicial review by way of a negligence action.

Illustrative of the problems posed by the majority's immunity analysis are Civil Code sections 222.40, 224.49 and Health and Safety Code section

laws. Unlike the situation alleged in *Elton, supra,* 3 Cal.App.3d at page 1059, Ham's decision to release Ronald to the Mundys plainly involved use of the County's coercive power over Ronald and the Mundys and hence the decision to return Ronald would come within the narrow definition of law enforcement set forth in *Clemente v. State of California* (1980) 101 Cal.App.3d 374, 378 [161 Cal.Rptr. 799].

1522.1. These statutes require that county social service agencies obtain the fingerprints and criminal records of prospective adoptive parents and submit the names of the prospective parents to the Department of Justice's Child Abuse Registry. (See Pen. Code, § 11170.) It is not difficult to imagine that in the course of an adoption proceeding a social services agency might negligently fail to meet the requirements of these statutes and that such failure would result in injuries similar to those suffered by Ronald. As I interpret the majority's immunity analysis, even though the collection and submission of the data required by these statutes can hardly be described as discretionary, because these duties are part of the adoption process they are nonetheless subject to discretionary immunity. (See maj. opn., *ante,* p. 897.) The incongruity of such an outcome suggests to me that the majority has cast the immunity net too far.

I also disagree with the majority's reliance upon the judicial and administrative immunity provided by Government Code section 821.6. As against claims by a natural parent who is losing parental rights or a prospective parent who, as a result of the process, is prevented from adopting a child, I have little difficulty with application of Government Code section 821.6. As against such parties, it is fair to describe the department's activities as being limited to institution of judicial proceedings.

As against claims by a dependent child or ward, however, I believe the role and duties of the department are far greater than participation in judicial proceedings. As the majority notes in concluding the County owed Ronald a duty, Ronald was entirely dependent upon the County to protect his safety and his interests in the dependency and adoption proceedings. (Maj. opn., *ante,* p. 895.) In my judgment the duty to protect Ronald's safety is in no way related to the unfettered access to judicial and administrative forums which is protected by Government Code section 821.6.

In light of the conclusions expressed herein, I concur in the judgment.

Respondent's petition for review by the Supreme Court was denied September 16, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.