Filed 2/18/25; certified for publication 3/11/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| K.C.,<br><br>    Plaintiff and Appellant,<br><br>            v.<br><br>COUNTY OF MERCED,<br><br>    Defendant and Respondent. | F087088<br><br>(Super. Ct. No. 22CV-02896)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Herman Law, Charles Y. Huang, Chantel E. Lafrades and Gregory S. Glazer for Plaintiff and Appellant.

Forrest W. Hansen, County Counsel, Jenna M. Anderson and Mark T. Laluan, Deputy County Counsel, for Defendant and Respondent.

-ooOoo-

Plaintiff K.C.[1] appeals from an August 24, 2023 judgment of dismissal entered in favor of defendant County of Merced (County) following sustention of a demurrer

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by first and/or last initials.  No disrespect is intended.

without leave to amend. In the operative complaint,[2] K.C.—citing Code of Civil Procedure section 340.1—contended that negligent acts and/or omissions of County and/or County's employees proximately caused the childhood sexual assault that resulted in her injuries. In view of statutes granting discretionary immunity to public employees and derivative immunity to public entity employers (see Gov. Code, §§ 815.2, subd. (b), 820.2), we conclude that the demurrer was properly sustained and affirm the judgment.

## BACKGROUND[3]

According to the complaint, K.C. "was sexually abused and assaulted in foster care while under the legal custody, care, and control of" County and consequently suffered "physical, psychological, and emotional injuries." The following facts were alleged:

"23. In approximately 1971, [County] placed Plaintiff in the foster home of . . . []'Foster Parents 1'[], located in Merced, California ('Foster Home 1'). Foster Parents 1 and Foster Home [1] were approved, licensed, trained, supervised, and/or compensated by [County].

"24. From approximately 1971 to 1976 when Plaintiff was approximately four (4) to [nine] (9) years old, Plaintiff was sexually abused and assaulted by Foster Parent's nephew . . . ('Perpetrator 1'), approximately daily for approximately five (5) years while Plaintiff resided in the foster home. The acts of sexual abuse and/or assault took place at Foster Home 1.

"25. The acts of sexual abuse and/or assault perpetrated against Plaintiff by Perpetrator 1 were for Perpetrator 1's sexual gratification and included, Perpetrator 1 fondling Plaintiff's chest and vagina under her

---

[2] K.C. filed her original complaint on September 1, 2022; an amended complaint on December 23, 2022; a second amended complaint on January 11, 2023; and a third amended complaint on May 9, 2023.

[3] "Because this appeal arises from a dismissal following a demurrer, we rely on [the operative] complaint . . . for a summary of the factual background. We accept as true all properly pleaded allegations without concern for proof problems." (*Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975, fn. 2.)

clothing, and Perpetrator 1 forcing Plaintiff to masturbate Perpetrator 1's penis.

"26. The acts of sexual abuse and assault perpetrated by Perpetrator 1 against Plaintiff included conduct which constitutes a 'childhood sexual assault' as defined in [Code of Civil Procedure s]ection 340.1[, subdivision ](d). [¶] . . . [¶]

"28. In approximately 1976, [County] placed Plaintiff in the foster home of foster mother and foster father ('Foster Parents 2'), located in Merced, California ('Foster Home 2'). Foster Parents 2 and Foster Home 2 were approved, licensed, trained, supervised, and/or compensated by [County].

"29. From approximately 1976 to 1977 when Plaintiff was approximately nine (9) to ten (10) years old, Plaintiff was sexually abused and assaulted by Plaintiff's foster brother . . . ('Perpetrator 2'), approximately [*sic*] multiple times for approximately one (1) year while Plaintiff resided in the foster home. The acts of sexual abuse and/or assault took place at Foster Home 2.

"30. The acts of sexual abuse and/or assault perpetrated against Plaintiff by Perpetrator 2 were for Perpetrator 2's sexual gratification and included Perpetrator 2 fondling Plaintiff's vagina under her clothing, and Perpetrator 2 forcing Plaintiff to perform oral copulation on Perpetrator 2's penis, and Perpetrator 2 performing oral copulation on Plaintiff's vagina.

"31. The acts of sexual abuse and assault perpetrated by Perpetrator 1 and Perpetrator 2 ('collectively, Perpetrators'[)] against Plaintiff included conduct which constitutes a 'childhood sexual assault' as defined in [Code of Civil Procedure s]ection 340.1[, subdivision ](d). [¶] . . . [¶]

"32. [County] w[as] put on notice of the sexual abuse and/or assault Plaintiff suffered while residing in Foster Home 1 several times. Plaintiff repeatedly reported that she was being sexually abused and/or assaulted to her social worker, Ms. P[.], an employee and/or agent of County.

"33. Despite disclosures to [County] and/or [County's] actual and/or constructive knowledge of the sexual assault and abuse at issue, no corrective action was taken to Plaintiff and Plaintiff remained in Foster Home 1 where she continued to be sexually assaulted and abused after Plaintiff disclosed the same to [County].

3.

"34.    [County] knew or should have known of sexual abuse and/or assault Plaintiff suffered while residing in Foster Home 2 as Plaintiff's demeanor []changed, she became withdrawn, depressed, and sad.  On one occasion, Plaintiff attempted to inform a teacher regarding the abuse.  The teacher informed Plaintiff's foster mother in Foster Home 2 and foster mother assaulted Plaintiff with a chair.

"35.    At all times relevant and material hereto, [County] knew, or in the exercise of reasonable care should have known, that the foster home in which [County] placed Plaintiff was unsafe.  It was thus foreseeable that Plaintiff would be sexually assaulted and/or abused and subjected to maltreatment in Foster Home.

"36.    [County] knew, or had reason to know, or were otherwise on notice, of misconduct by Perpetrators that created a risk of childhood sexual assault and/or abuse against Plaintiff, and [County] failed to take reasonable steps and/or implement safeguards to avoid such acts of childhood sexual assault and abuse.  [¶] . . . [¶]

"39.    At all relevant times, [County] knew or should have known that Perpetrators w[ere] unfit, dangerous, and a threat to the health, safety, and welfare of minors entrusted to [County's] care.

"40.    Despite such actual or constructive knowledge, [County] provided Perpetrators unsupervised access to Plaintiff and gave said Perpetrators the opportunity to commit foreseeable acts of child sexual abuse and/or assault.

"41.    [County] knew, or had reason to know, or were otherwise on notice of sexual assault and abuse of Plaintiff by Perpetrators and [County] failed to take reasonable steps or to implement reasonable safeguards to avoid foreseeable acts of childhood sexual assault."

## III.    Demurrer

County filed a demurrer on June 26, 2023.  It argued:  (1) "discretionary immunity under Government Code section 820.2 shields County social service providers, such as Ms. P[.], from liability for making . . . discretionary determinations" "to take investigative or corrective action in response to [a p]laintiff's reports of abuse"; and

4.

(2) where "County social service providers are immune . . . , . . . County is similarly immune under Government Code section 815.2(b)."**4**

## IV. Ruling

A hearing was held on County's demurrer on August 1, 2023. Thereafter, on August 24, 2023, the superior court filed an order sustaining the demurrer without leave to amend the complaint. The complaint was dismissed with prejudice and judgment was entered in favor of County.

## DISCUSSION

## I. Pertinent law

a. *Reviving time-barred claims relating to childhood sexual assault occurring before January 1, 2024*

Prior to January 1, 2024, Code of Civil Procedure section 340.1, as amended by Statutes 2022, chapter 444, section 1, read in part:

> "(a) In an action for recovery of damages suffered as a result of childhood sexual assault, the time for commencement of the action shall be within 22 years of the date the plaintiff attains the age of majority or within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by sexual assault, whichever period expires later, for any of the following actions:
>
> > "(1) An action against any person for committing an act of childhood sexual assault.
> >
> > "(2) An action for liability against any person or entity who owed a duty of care to the plaintiff, if a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff.

---

**4** In addition, regarding K.C.'s allegations in connection with Foster Home 2, County argued Code of Civil Procedure 340.1 required K.C. to "plead[] facts showing . . . County had notice at the time of the alleged harms," but "there are no facts alleged showing County was on actual or constructive notice of abuse at the time of the harms."

"(3) An action for liability against any person or entity if an intentional act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff. [¶] . . . [¶]

"(c) An action described in paragraph (2) or (3) of subdivision (a) shall not be commenced on or after the plaintiff's 40th birthday unless the person or entity knew or had reason to know, or was otherwise on notice, of any misconduct that creates a risk of childhood sexual assault by an employee, volunteer, representative, or agent, or the person or entity failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. For purposes of this subdivision, providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard. Nothing in this subdivision shall be construed to constitute a substantive change in negligence law.

"(d) 'Childhood sexual assault' as used in this section includes any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by Section 266j of the Penal Code; Section 285 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 286 of the Penal Code; subdivision (a) or (b) of Section 288 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 287 or of former Section 288a of the Penal Code; subdivision (h), (i), or (j) of Section 289 of the Penal Code; any sexual contact as defined in paragraph (1) of subdivision (d) of Section 311.4 of the Penal Code; Section 647.6 of the Penal Code; or any prior laws of this state of similar effect at the time the act was committed. This subdivision does not limit the availability of causes of action permitted under subdivision (a), including causes of action against persons or entities other than the alleged perpetrator of the abuse. [¶] . . . [¶]

"(q) Notwithstanding any other law, a claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a) that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020. A plaintiff shall have the later of the three-year time period under this subdivision or the time period under subdivision (a) as amended by the act that added this subdivision. [¶] . . . [¶]

"(s) Notwithstanding any other law, including Chapter 1 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with

Section 900) and Chapter 2 of Part 3 of Division 3.6 of Title 1 of the Government Code (commencing with Section 910), a claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a), is not required to be presented to any government entity prior to the commencement of an action."**5**

b. *Governmental tort liability*

"Except as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).) "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against the employee or his personal representative." (*Id.*, § 815.2, subd. (a).)

c. *Immunity*

A defendant may raise immunity as the basis for a demurrer. (See, e.g., *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 977 (*Caldwell*).) "An 'immunity' is '[a]ny exemption from a duty [or] liability . . . .' [Citation.] It ' "avoids liability in tort under

---

**5** After judgment was entered and before K.C. filed this appeal, the Legislature enacted Assembly Bill No. 452 (2023-2024 Reg. Sess.) and Senate Bill No. 558 (2023-2024 Reg. Sess.).

Assembly Bill No. 452 amended Code of Civil Procedure section 340.1. (See Stats. 2023, ch. 655, § 1.) The current statute no longer imposes "time limits for the commencement of actions for the recovery of damages suffered as a result of childhood sexual assault" or "the prohibition on certain actions proceeding on or after the plaintiff's 40th birthday unless specified conditions are met" (Legis. Counsel's Dig., Assem. Bill No. 452 (2023-2024 Reg. Sess.), Stats. 2023, ch. 655), but these revisions only apply to claims "in which the childhood sexual assault occurred on and after January 1, 2024" (Code Civ. Proc., § 340.1, subd. (p)).

Senate Bill No. 558 added Code of Civil Procedure section 340.11 (see Stats. 2023, ch. 877, § 1), which "applies only to those instances of childhood sexual assault that occur before January 1, 2024" (Legis. Counsel's Dig., Sen. Bill No. 558 (2023-2024 Reg. Sess.). This new statute is more or less identical to the pre-January 1, 2024 version of Code of Civil Procedure section 340.1, incorporating the language that was deleted by Assembly Bill No. 452. (See Code Civ. Proc., § 340.11, subds. (a), (c).)

7.

all circumstances, within the limits of the immunity itself; it is conferred, not because of the particular facts, but because of the status or position of the favored defendant; and it does not deny the tort, but [rather] the resulting liability. . . .'" [Citation.]' [Citation.] When the law grants an immunity, it does not mean that the defendant's conduct is not tortious, but rather that the defendant is absolved from liability." (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 378.) Generally, a court initially determines whether a defendant owes a duty to a plaintiff before it determines whether the former is immune. (See *Caldwell*, *supra*, at p. 978, fn. 3 [" 'duty before immunity' " doctrine].) However, the court may elect to proceed directly to the immunity issue on the grounds of expediency and judicial economy. (*Cruz v. Briseno* (2000) 22 Cal.4th 568, 572; *Caldwell*, *supra*, at p. 978, fn. 3; *Kisbey v. State of California* (1984) 36 Cal.3d 415, 418.)

"Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code, § 815.2, subd. (b).) In other words, "if the employee is immune, so too is the [public entity]." (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435 (*Kemmerer*), overruled in part on another ground by *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 815, fn. 8; accord, *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 468-469 (*Jacqueline*); see *McCarty v. State of California Dept. of Transportation* (2008) 164 Cal.App.4th 955, 979 [public entity cannot be derivatively liable under theory of respondeat superior if relevant public employee has discretionary immunity].) "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (Gov. Code, § 820.2; accord, *Jacqueline*, *supra*, at p. 465; *Kemmerer*, *supra*, at p. 1435.)

## II. Standard of review

"A demurrer tests the legal sufficiency of the complaint. [Citation.] On appeal from a judgment of dismissal following an order sustaining a demurrer, we examine the complaint de novo in order to ascertain 'whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that can be reasonably inferred from those pleaded, and facts of which judicial notice can be taken. [Citation.] But we do not assume the truth of pleaded contentions and legal conclusions. [Citations.] And we may disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. [Citation.]" (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1263.) On appeal, the plaintiff bears the burden of demonstrating that the superior court erred in sustaining the demurrer. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; *Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 219.) "The judgment will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the court did not rely on those grounds." (*Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 350.)

## III. Analysis

The operative complaint alleged: (1) K.C. was sexually assaulted at two separate foster care placements in the 1970's; (2) K.C. gave notice to County—via social workers—of this abuse;[6] and (3) no investigative or corrective action was taken.

---

[6] With respect to Foster Home 1, the complaint specified K.C. "repeatedly reported that she was being sexually abused and/or assaulted to her social worker, Ms. P[.], an employee and/or agent of County." On the other hand, with respect to Foster Home 2, the complaint focused on K.C. becoming "withdrawn, depressed, and sad" and "inform[ing] a teacher regarding the abuse." We assume arguendo that a social worker observed this change in demeanor and was aware of the communication between K.C. and the teacher.

"Whether or not a public employee is immune from liability under [Government Code] section 820.2 depends . . . upon whether the act [or omission] in question was 'discretionary'[.]" (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 260 (*McCorkle*); see *Kemmerer*, *supra*, 200 Cal.App.3d at p. 1437 [" 'Generally speaking, a discretionary act is one which requires the exercise of judgment or choice.' "].) However, discretionary immunity "is limited to policy and planning decisions, and does not reach 'lower level decisions that merely implement a basic policy already formulated.' [Citation.]" (*Jacqueline*, *supra*, 155 Cal.App.4th at p. 465.) "Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 794, fn. 8 (*Johnson*).)

We conclude that Government Code section 820.2 applies in the instant case. The social workers' decisions at issue relate to "the investigation of child abuse" (*Jacqueline*, *supra*, 155 Cal.App.4th at p. 467) and discontinuation of a foster home placement (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1466 (*Becerra*)) "based upon suspicion of abuse" (*Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 881 (*Alicia*)). They not only "involve[] the exercise of analysis and judgment as to what is just and proper under the circumstances" (*Kemmerer*, *supra*, 200 Cal.App.3d at p. 1438) but also constitute "sensitive policy decision[s] that require[] judicial abstention to avoid affecting a coordinate governmental entity's decisionmaking or planning process" (*Barner v. Leeds* (2000) 24 Cal.4th 676, 688 (*Barner*)). (See *Alicia*, *supra*, at p. 883 [continuing exercise of discretion "in favor of the protection of minor children"].) These qualities hold true for, as here, "preliminary determinations" that "reports of

possible abuse" "did not warrant initiation" of further action.[7, 8] (*Jacqueline*, *supra*, at p. 468; see *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 733 ["[E]valuation of information is an integral part of 'the exercise of the discretion' immunized by [Government Code] section 820.2."]; cf. *Conway v. County of Tuolumne*, *supra*, 231 Cal.App.4th at p. 1015 [police officer's decision "to investigate or not investigate" a vehicle accident immunized by Gov. Code, § 820.2].)

"Further, there are strong policy considerations in favor of upholding immunity" for social workers. (*Kemmerer*, *supra*, 200 Cal.App.3d at p. 1438; see *Johnson*, *supra*, 69 Cal.2d at p. 789 [eschewing "purely mechanical analysis of 'discretionary' in favor of greater reliance on the policy considerations relevant to the purposes of granting immunity to the governmental agency whose employees act in discretionary capacities"].) " '[E]xperience has shown that the common good is best served by permitting [public employees] to perform their assigned tasks without fear of being called to account in a civil action . . .' [citation]." (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1343.) "The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcomes would impair the zeal in the performance of their functions, and it is better to leave the injury unredressed than to

---

[7] By definition, a preliminary determination *not* to proceed cannot also be a "subsequent ministerial action[] in the implementation of that [determination.]" (*Johnson*, *supra*, 69 Cal.2d at p. 797; cf. *Barner*, *supra*, 24 Cal.4th at p. 686 ["[A] public employee's initial decision whether to provide professional services to an individual might involve the exercise of discretion pursuant to [Government Code] section 820.2, but . . . once the employee undertakes to render such services, he or she is not immune for the negligent performance of professional duties that do not amount to policy or planning decisions."]; *Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1015 [Gov. Code, § 820.2 does not apply to "an officer's conduct of an accident investigation after the officer made the discretionary decision to undertake the investigation].)

[8] We point out that K.C. does not cite any laws existing at the time of the alleged incidents that compelled social workers responding to childhood sexual assault claims to achieve a particular result or left them " 'no choice' " (*McCorkle, supra,* 70 Cal.2d at p. 261) as to how to handle such claims.

subject [them] to the constant dread of retaliation.  [Citation.]' " (*Kemmerer*, *supra*, at p. 1437, quoting *Lipman v. Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 229.)  " 'The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against [those] who may have abused their children.  The social worker's independence . . . would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.'  [Citations.]" (*Alicia*, *supra*, 222 Cal.App.3d at pp. 880-881.)  Because "[i]t is necessary to protect social workers in their vital work from the harassment of civil suits" (*id.* at p. 881), "social workers must be absolutely immune from suits alleging the improper investigation of child abuse" and "removal of  a minor" "based upon suspicion of abuse" (*ibid.*).  (Accord, *Jacqueline*, *supra*, 155 Cal.App.4th at pp. 466-467.)

On appeal, K.C. contends that the social workers' failure to take investigative or corrective action was "operational and ministerial" because it was done "in the course of the continuing supervision of her foster care" and "decisions made by social workers or other County employees in the course of supervising the foster care of a child in the County's custody are not discretionary, policy-type decisions."  She asserts:

> "The decision to remove a child from his or her natural parents and place that child in custodial foster care must be distinguished from decisions made while supervising a foster child *after* the decision to undertake custody and initiate foster care is made.  While the former decisions may be discretionary, the latter are operational and ministerial."

We do not dispute that decisions pertaining to foster care placement are discretionary acts within the meaning of Government Code section 820.2.  (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1285 (*Gabrielle*)); *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1381 (*Christina*).)  Nor do we question that "maintenance of a child in a foster home involves an obligation of continued supervision" and much of what is required "in terms of continued administration of the child's welfare

12.

undoubtedly constitutes simple and uncomplicated surveillance which reasonably could be characterized as ministerial." (*Ronald S. v County of San Diego* (1993) 16 Cal.App.4th 887, 898 (*Ronald*).) However, decisions as to whether to undertake investigative or corrective action in response to reported child abuse fall outside the ambit of such surveillance and are "[no] less 'discretionary' for purposes of the immunity of Government Code section 820.2 than the original placement decision[.]" (*Becerra*, *supra*, 68 Cal.App.4th at p. 1466.) We do not accept the notion that a "subjective decisionmaking process" "could [be] transmute[d]" "into a ministerial act" (*Ronald*, *supra*, at p. 897) simply because that process assesses incidents that occurred within a foster home.

K.C. also contends that County's demurrer should have been overruled because the operative complaint did not indicate "an employee of the County made a considered . . . decision" or "actually exercised" "discretion . . . by the weighing of risks and benefits in deciding on the challenged course of action." While a finding of immunity is precluded "solely on grounds that 'the [affected] employee's general course of duties is "discretionary" ' " (*Caldwell*, *supra*, 10 Cal.4th at p. 983, italics omitted) and "requires a showing that 'the specific conduct giving rise to the suit' involved an actual exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages' " (*ibid.*, italics omitted), "a strictly careful, thorough, formal, or correct evaluation" is not mandatory (*ibid.*, italics omitted). "Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." (*Id.* at pp. 983-984; see *Gabrielle*, *supra*, 10 Cal.App.5th at p. 1285 ["Courts have determined immunity applies to such decisions no matter how horrible the outcome, including a situation where a social worker returned a child to a father, who stabbed the child in the heart and lungs shortly thereafter."]; *Christina*, *supra*, 220 Cal.App.4th at p. 1381 [discretionary immunity "applies even to 'lousy' decisions in which the [social] worker abuses his or her discretion, including

13.

decisions based on 'woefully inadequate information.' "].)  Here, under a "fair reading" of the complaint (*Caldwell*, *supra*, at p. 984), K.C. essentially alleged County's social workers were confronted with reports of sexual abuse that should have prompted investigative or corrective action, but they failed to properly exercise their discretion to do so.  "[C]laims of improper evaluation cannot divest a discretionary policy decision of its immunity."  (*Caldwell, supra,* at p. 984, fn. omitted.)[9]

Because we conclude that Government Code section 820.2 applies in the instant case, County is immune by virtue of Government Code section 815.2, subdivision (b). (See *Jacqueline*, *supra*, 155 Cal.App.4th at pp. 468-469; *Kemmerer*, *supra*, 200 Cal.App.3d at p. 1435.)  Therefore, County's demurrer was properly sustained.[10]

---

[9] On February 3, 2025, K.C. filed a "Letter Providing Supplemental Authority" informing us of *D.G. v. Orange County Social Services Agency* (Jan. 14, 2025, G063411) ___ Cal.App.5th ___ [2025 WL 354553], an opinion handed down by Division Three of the Fourth Appellate District.  This case addressed—inter alia—whether discretionary immunity was a proper basis for granting summary judgment and is therefore inapposite. (See *Leo F. Piazza Paving Co. v. Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591, fn. 4 ["The purpose of a demurrer is to test the legal sufficiency of a pleading, not to test the evidence or other extrinsic matters.  Summary judgment, on the other hand, provides a method by which, if the pleadings are *not* defective, the court may determine whether the triable issues apparently raised by them are real or merely the product of adept pleading."].)

[10] Having decided that the demurrer was properly sustained, we need not address any other grounds for demurrer asserted by County.  (See *Padilla v. City of San Jose* (2022) 78 Cal.App.5th 1073, 1080.)

## DISPOSITION

The judgment of dismissal is affirmed.  Costs on appeal are awarded to defendant and respondent County of Merced.


FAIN, J.*

WE CONCUR:


HILL, P. J.


PEÑA, J.

---

\* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/11/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| K.C., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF MERCED, <br><br> Defendant and Respondent. | F087088 <br><br> (Super. Ct. No. 22CV-02896) <br><br><br> **ORDER** |

As the nonpublished opinion filed in the above entitled matter on February 18, 2025, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

FAIN, J.*

WE CONCUR:


HILL, P. J.


PEÑA, J.

---

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.