Filed 10/23/25  T.L. v. San Diego County Health and Human Services Agency CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| T.L., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Defendant and Respondent. | D084870 <br><br><br> (Super. Ct. No. 37-2021-00014628-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

Herman Law, Gregory S. Glazer, and Mia A. Kelly for Plaintiff and Appellant.

Office of County Counsel, Katie A. Richardson, for Defendant and Respondent.

Plaintiff T.L. sued the San Diego County Health and Human Services Agency (the County) alleging the County negligently failed to adequately investigate her claims of sexual abuse while she was in foster care as a child, over 35 years ago, and failed to remove her from the home.  The superior court granted summary judgment in favor of the County, concluding it was

entitled to discretionary act immunity under Government Code[1] section 820.2 for the acts of its social workers.

Plaintiff appeals, arguing discretionary act immunity does not apply to the decisions social workers make after the child has already been removed from the parents and placed in foster care because these are not the type of policy level decisions for which immunity attaches. Even if they were, Plaintiff contends the County has not demonstrated a social worker undertook the requisite conscious balancing of risks and advantages before making a discretionary decision in her case. Alternatively, Plaintiff requests that the motion for summary judgment be continued so that she may conduct additional discovery pursuant to Code of Civil Procedure section 473c, subdivision (h).

The County responds that Plaintiff has not shown that a material factual dispute exists to undermine the County's entitlement to discretionary act immunity in this case. Additionally, it contends Plaintiff waived her discovery request by not arguing the court abused its discretion in denying her request to continue below. It further submits Plaintiff could not demonstrate such an abuse of discretion because it was her sixth request for a continuance. Finally, the County argues Plaintiff's action is time-barred because she was over the age of 40 when she filed her original complaint and cannot prove that either of the exceptions set forth in Code of Civil Procedure section 340.1 apply.

We agree the County is entitled to discretionary act immunity and that Plaintiff has not demonstrated the court abused its discretion by declining to

---

[1] Further undesignated statutory references are to the Government Code.

continue the summary judgment hearing to allow her to conduct additional discovery. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.    *Plaintiff's Experience in Foster Care*

In November 1989, the County removed Plaintiff from her biological mother's home and placed her with her maternal aunt, Cynthia Duncan, and uncle, Dennis Cason. Plaintiff was 10 years old at the time. County records indicate social workers Richard Jensen, Lorna Grund, and Barbara Norton worked on Plaintiff's case during the relevant timeframe of November 1989 through December 1990.

During her first year in the home, Plaintiff did not report any abuse. But in November 1990, Plaintiff told Duncan that Cason molested her. Duncan took Plaintiff to talk to Cason, who denied the allegation. Duncan then told Cason to leave the house while she figured out what was happening. Duncan said Cason left immediately. A day or two later, Duncan called the County to report Plaintiff's statement. When asked if Cason was still in the home, Duncan responded, "no." In the meantime, Plaintiff told her biological mother, who also reported the allegation to a County social worker.

Plaintiff testified at her deposition that one of her social workers, Richard,[2] came to the Cason home to interview her. She told him she felt like Cason had touched her inappropriately.

About a week later, Duncan called the County to report that Plaintiff told Duncan she lied about Cason molesting her because she was angry. Duncan expressed that she did not believe the molestation occurred, but a County social worker informed her that he would nonetheless need to

---

[2]    She did not recall his last name.

continue investigating. Duncan said Plaintiff had an appointment with a therapist scheduled.

During a subsequent phone call, a social worker asked Duncan about Cason's whereabouts at the time Plaintiff claimed he molested her. Duncan stated that Cason was not home during that period. The social worker told her no adult male should be alone with Plaintiff during the investigation and instructed her to let Plaintiff's therapist know about the accusations so she could seek additional support. The County ultimately did not remove Plaintiff from the home.[3] She did not accuse Cason of any further molestation.

B.     *Complaint and Summary Judgment Proceedings*

In 2021, Plaintiff sued the County for negligence, asserting in her first amended complaint that the County failed to remove her from the home or to otherwise take steps to prevent further abuse after Plaintiff reported Cason's sexual abuse. She alleged that Cason continued to abuse her for about a month after she reported him.

In March 2024, the County moved for summary judgment arguing it was entitled to discretionary act immunity and that Plaintiff's action was

---

[3]     Duncan testified that no one called to let her know the outcome of the investigation but said she received a letter finding the allegations "unfounded." Plaintiff objected to this testimony on hearsay grounds. It does not appear the trial court ruled on this objection, so "it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) Although Plaintiff met her burden to renew the objection on appeal (see *ibid.*), we deem it unnecessary to rely upon this testimony for purposes of resolving the appeal.

4

time-barred.[4]  Plaintiff disputed the County's immunity assertion but did not address the timeliness argument.  She argued in the alternative that the court should grant a continuance so she could obtain evidence necessary to oppose the motion.  Specifically, Plaintiff indicated she required the depositions of (1) the County's person most knowledgeable and (2) social workers Lorna Grund and Diane Wilkins regarding what additional investigations they conducted or recommended in response to notice that a foster child was at risk of abuse.

On June 7, 2024, the court granted summary judgment.  As to the issue of discretionary act immunity, the court concluded:

> "[A] social worker's determination not to remove a minor from a home is [a] discretionary decision subject to absolute immunity. (Govt. Code[,] § 820.2; *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 466 (collecting cases).)  The immunity 'applies even to lousy decisions in which the worker abuses his or her discretion, including decisions based on woefully inadequate information.'  (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1285; see *Ortega v. Sacramento County Dept. of Health & Human Svcs.* (2008) 161 Cal.App.4th 713, 728.)  The immunity applies even though plaintiff might otherwise be able to state a claim for negligence; otherwise, the grant of immunity would be superfluous."

Because this issue was dispositive of the case, the court did not address the County's remaining arguments.

## II.  DISCUSSION

### A.    *Standard of Review*

A defendant moving for summary judgment has the initial burden to present evidence sufficient to establish that the plaintiff either cannot prove

---

[4]     The County also raised two additional contentions not at issue in the present appeal.

at least one element of each cause of action as alleged in the complaint or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853 (*Aguilar*).)  If the defendant does so, the burden shifts to the plaintiff to provide evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar,* at p. 850.)  The trial court may not weigh the evidence and must deny the motion if the evidence presented by the opposing party, or any inferences reasonably drawn from it, raises a triable issue of material fact.  (*Aguilar,* at p. 856.)

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We conduct an independent assessment and apply the same legal standards as the trial court to determine whether there are any issues of material fact precluding summary judgment.  (See *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231.)

B.     *Discretionary Immunity*

Public employees are liable for torts they commit unless a statute provides otherwise.  (§ 820, subd. (a).)  Likewise, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative" unless the employee is immune from liability. (§ 815.2, subds. (a)–(b).)  One exception to this general rule of liability, which may provide immunity to a public employee, and thus his or her otherwise vicariously liable employer, is found in section 820.2.  (See *Caldwell v.*

6

*Montoya* (1995) 10 Cal.4th 972, 979–980 (*Caldwell*) [noting that these provisions of the Tort Claims Act (now referred to as the Government Claims Act) codified pre-existing state law].) Section 820.2 states: "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Courts in the past had attempted to differentiate between immune "discretionary" acts and unprotected "ministerial" acts, but our Supreme Court recognized it was difficult to draw a line distinguishing the two. (*Johnson v. State* (1968) 69 Cal.2d 782, 793 (*Johnson*).) In first construing section 820.2, the *Johnson* court recognized that nearly every official act " 'admit[s] of some discretion in the manner of its performance.' " (*Id.* at p. 788.) Accordingly, instead of attempting to provide a literal or semantic parsing of the word "discretion," the high court focused on the policy considerations for granting immunity to a governmental agency whose employees exercise discretion. (*Id.* at p. 789.) The historical justification for attaching immunity to public officials' "discretionary" acts was to protect them from "the spectre of extensive personal tort liability." (*Id.* at p. 790.) However, because the Government Claims Act now provides defense and indemnity to public employees sued personally, absent a showing of bad faith, "fears that personal exposure to damage suits and judgments would deter the vigorous performance of public responsibilities are no longer a policy basis for immunity." (*Caldwell, supra*, 10 Cal.4th at p. 981.)

Under the current statutory scheme, the rationale for affording some government employees immunity is the need to provide appropriate judicial abstention from interfering with "basic policy decisions" committed to a co-

7

equal branch of government.  (See *Caldwell, supra*, 10 Cal.4th at p. 981.)  As the *Johnson* court explained, allowing judicial review of such policy decisions "would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government . . . [and] might even in the first instance affect the coordinate body's decision-making process."  (*Johnson, supra*, 69 Cal.2d at p. 793.)

In focusing instead on whether basic policy decisions were involved, the *Johnson* court said the difference could be explained as being between "the 'planning' and 'operational' levels of decision-making."  (*Johnson, supra,* 69 Cal.2d at p. 794.)  As an example, it cited with approval a case interpreting similar "discretionary" language in section 2680 of the Federal Tort Claims Act, which explained that:  " '[O]nce the determination has been made that a service will be furnished and the service is undertaken, then public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed.' " (*Id.* at p. 796, quoting *Sava v. Fuller* (1967) 249 Cal.App.2d 281, 290.)

It is not, however, enough to simply demonstrate that the discretionary decision involves a policy or planning level decision.  "*Johnson* precludes a finding of immunity solely on grounds that 'the [affected] employee's *general course of duties* is "discretionary" . . . ,' and requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages.' " (*Caldwell, supra*, 10 Cal.4th at p. 983.)  "But *Johnson* does not require a strictly careful, thorough, formal, or correct evaluation.  Such a standard would swallow an immunity designed to protect against claims of

8

carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." (*Id.* at pp. 983–984.)

In this case, Plaintiff challenges the trial court's conclusion that the County was entitled to discretionary act immunity for its social workers' actions in responding to Plaintiff's allegation that her foster father sexually abused her. She contends the County has not shown its social worker, Jensen, made a quasi-legislative, policy level decision or that he consciously weighed the risks and advantages to Plaintiff in leaving her in the foster home.[5]

Courts of Appeal have consistently concluded that public agencies' decisions to remove children from their biological parents, leave them in a parent's care, or return them to a parent are discretionary, planning-level decisions entitled to immunity. (See, e.g., *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 718, 732 [immunity for return to father], *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1287 (*Gabrielle A.*) [immunity for removal from parents, detention, and placement with relatives]; *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 468 [immunity for failure to remove from father]; *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 883 [immunity for removal from parents and failure to return child in a

---

[5]     A decision as to immunity would be unnecessary unless Plaintiff presented facts otherwise demonstrating negligence. To prove negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a legal duty and that, by breaching that duty, the defendant proximately caused the plaintiff's damages. (*D.G. v. Orange County Social Services Agency* (2025) 108 Cal.App.5th 465, 471 (*D.G.*).) "There is no dispute that a foster child is in a special relationship with the agency that provides his or her care." (*Ibid.*) The parties here do not appear to challenge that this resulted in the County owing a duty to protect Plaintiff from her foster father under the facts of this case, so we do not further address the issue.

reasonable time].)  They have also found immunity appropriate for final determinations to place a child in a certain adoptive home.  (See, e.g., *Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, 898–899 (*Ronald S.*).) Where the classification of actions by social workers and other agents of public agencies is less clear is in the intermediate stage where these individuals are monitoring, protecting, and responding to children while they are in foster care.

In *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053 (*Elton*), decided soon after our Supreme Court's decision in *Johnson*, a minor sued a county probation department alleging the department "negligently placed [her] in a home where she was subject to torture and abuse and negligently maintained, cared for and supervised."  (*Id.* at pp. 1055–1056, 1058.)  This court acknowledged that while functions such as recommending that a child be declared a dependent child could be classified as involving basic policy decisions that warranted immunity, it did not follow that the "subsequent ministerial acts in implementing such decisions rise to the same level."  (*Id.* at p. 1058.)  Accordingly, we concluded that although "[d]ecisions made with respect to the maintenance, care or supervision of plaintiff, as a dependent child, or in connection with her placement in a particular home, may entail the exercise of discretion in a literal sense . . . such determinations do not achieve the level of basic policy decisions, and thus do not, under the provisions of Government Code section 820.2, preclude judicial inquiry into whether negligence of public employees was involved and whether such negligence caused or contributed to plaintiff's injuries."  (*Ibid.*)

Since then, however, appellate courts have continued to expand upon the immunity afforded to government entities charged with protecting children in foster care.  For example, in *Becerra v. County of Santa Cruz*

10

(1998) 68 Cal.App.4th 1450 (*Becerra*), the heirs of a minor murdered at a school while in foster care argued, among other things, that the county was required to "supervise, intervene, and remove the child from the detrimental [foster home] environment." (*Id.* at pp. 1454, 1466.) Having already concluded the initial decision to place the child in the foster home was a discretionary determination entitled to immunity, the court explained that it was "not persuaded that the intervention and change in placement advocated by appellant are any less 'discretionary' for purposes of the immunity of Government Code section 820.2 than the original placement decision." (*Id.* at pp. 1462, 1466.) The court reasoned that "[e]ven if some activities in monitoring a placement might be considered ministerial (an issue we do not decide), the ultimate decision about . . . whether to intervene and discontinue a child's placement, is a discretionary placement decision." (*Id.* at p. 1466.)

In *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627 (*Terrell R.*), the county placed Terrell R. in a foster home where the foster father sexually molested him. (*Id.* at p. 635.) Terrell R. sued the county for, among other things, negligence in placing and supervising him in foster care. (*Ibid.*) On the negligent supervision claim, the appellate court concluded that "[t]he appropriate degree of supervision of a foster parent, in excess of the visitation schedule mandated by statute or regulation, is a uniquely discretionary activity for which the County social worker and the County are immune." (*Id.* at p. 645.)

Our Supreme Court appears to have adopted this expanded view. Although the 2015 decision addressed mandatory reporting duties, and thus its comments about discretionary decisions were not pivotal to its decision, the high court stated broadly that "[t]he Courts of Appeal have held that the decisions of child welfare agency employees—regarding determinations

11

of child abuse, the potential risk to a child, placement of a child, removal of a child, and other resultant actions—are subjective *discretionary* ones." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 191–192 (*B.H.*).) Citing several recent decisions, it concluded these holdings were supported by the legislative history and statutory structure. (*Id.* at p. 192.)

In January 2025—one month before Plaintiff filed her opening brief before this court—Division Three of the Fourth District decided *D.G., supra,* 108 Cal.App.5th 465. In that case, D.G. sued the county for negligence arising out of alleged sexual abuse by his foster father, who became his adoptive father. (*Id.* at p. 468.) Applying the two-part *Johnson* analysis, the court first accepted without discussion that the county workers' actions were discretionary, quoting the language from *B.H.* cited above. (*Id.* at p. 473.) It then considered whether D.G.'s social worker consciously balanced the risks and advantages and actually exercised her discretion in deciding to retain D.G. in the foster home after considering his abuse allegations and other potential red flags. (*Id.* at pp. 473–474 citing *Caldwell, supra,* 10 Cal.4th at p. 983.) The Third Division concluded, "[t]here [was] simply no evidence in the record that [the social worker], or anyone else, exercised discretion as described in *Johnson* and *Caldwell*." (*Id.* at p. 474.)

In the instant appeal, Plaintiff acknowledges that the County's initial decision to remove her from her mother's care and place her in foster care with her aunt and uncle may be deemed discretionary. But in her view, once it placed her in foster care, the County's duty to supervise her care became simply ministerial. We disagree.

We do not expressly find fault with our prior statements in *Elton* and *Ronald S.* that once a child is placed in a foster home, "[m]uch of what the County is obligated to do in terms of continued administration of the child's

12

welfare undoubtedly constitutes simple and uncomplicated surveillance which reasonably could be characterized as ministerial." (*Ronald S., supra*, 16 Cal.App.4th at p. 898.) Some of these routine supervising responsibilities are required by statute. Under some circumstances, even actions by social workers that go beyond the required minimum could still be categorized as operational in nature.

Where we respectfully part ways with our colleagues in *Elton* is in classifying the decisions made by social workers or other government workers once a foster child reports abuse in the foster home. Although the *Elton* court acknowledged that decisions "such as recommending a child be, or not be, declared a dependent child" could be classified as policy decisions, it concluded "[d]ecisions made with respect to the maintenance, care or supervision of plaintiff, as a dependent child, or in connection with her placement in a particular home . . . do not achieve the level of basic policy decisions." (*Elton, supra*, 3 Cal.App.3d at p. 1058.) We believe the realities of foster care require a more nuanced analysis than we were able to make on the limited allegations available in addressing an order dismissing a complaint on demurrer in *Elton*.[6]

Furthermore, as detailed above, the legal landscape has evolved significantly over the 55 years since we decided *Elton* and supports

---

[6] The question of whether courts may determine at the demurrer stage that discretionary act immunity applies is presently before the California Supreme Court. In another case involving allegations of sexual abuse while in foster care, our high court will address the question: "Was plaintiff's complaint alleging that a social worker failed to investigate or act in response to claims of sexual abuse subject to demurrer on the ground that discretionary act immunity under Government Code section 820.2 precluded liability?" (*K.C. v. County of Merced* (2025) 109 Cal.App.5th 606, review granted Jun. 25, 2025, No. S290435.)

reconsideration of the decision. The majority of appellate courts subsequently addressing the issue have concluded that placement in a particular foster home is a discretionary decision. (See, e.g., *B.H., supra*, 62 Cal.4th at pp. 191–192; *Gabrielle A., supra,* 10 Cal.App.5th at p. 1287; *Becerra, supra*, 68 Cal.App.4th at p. 1466.) We determined in *Ronald S.* that "[t]he nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity" (*Ronald S., supra*, 16 Cal.App.4th at p. 897), and we conclude the same reasoning justifies finding that evaluating and deciding on a foster home placement is a discretionary decision:

> "The decisions made in the adoption process are by nature highly subjective. Whether a child is adoptable in a particular circumstance and whether the couple desiring to adopt the child will provide a proper home for the child have got to be decisions of a highly speculative nature. There is no way that the following of forms or rules or agency procedures could transmute this most subjective decision-making process into a ministerial act. Following the *Johnson* admonition to courts not to second-guess policy decisions of other branches of government, we opine that second-guessing adoption decisions, and imposing civil liability upon public servants when the decision turns out to be wrong, would severely interfere with and surely impede the proper workings of the responsible social service department." (*Ibid.*)

Additionally, we view the analysis a social worker must engage in following allegations of abuse while a child is in foster care as a decision to *re*-evaluate the foster placement choice in light of new evidence, not as a categorically different undertaking. As such, the social worker's renewed investigation and updated decision as to whether the foster home is still a suitable household would also constitute a discretionary policy decision.

The distinction the *Johnson* court addressed between quasi-legislative policy decisions and those implementing such decisions may always be an

14

imperfect dividing line in the context of agency actions, given that the executive branch of government generally is tasked with enforcing laws as opposed to crafting policy. Too broad a reading could easily justify labeling all executive actions "operational." Indeed, much of the policymaking governing when and how children will be removed and placed the Legislature already codified by statute in the welfare and institutions code. On the other hand, the Legislature repeatedly afforded significant discretion to social workers in terms of weighing competing interests and the unique circumstances of each child. (See, e.g., Welf. & Inst. Code, §§ 300, subd. (j) [discretion to offer voluntary services to those families who do not come within the descriptions of this section], 361.3, subds. (a), (d) [discretion regarding placement following removal from parents]; 387, subd. (b) [directing social worker to re-assess discretionary section 361.3 criteria in recommending the court change or modify a previous placement order the worker subsequently deems ineffective in protecting the child].) Unlike other executive agencies that may formulate regulations that can be applied uniformly in implementing statutes, there simply are too many variables involved in child welfare situations to make such uniformity feasible. It is for this reason we find it appropriate to classify the decision of what investigative or corrective action to take in response to reported child abuse as continued "planning" for the protection of the child—a decision entrusted to a coordinate branch of government—as opposed to an "operational" action. The considerations are too multifaceted to fall within the ambit of routine or "simple and uncomplicated surveillance." (*Ronald S., supra*, 16 Cal.App.4th at p. 898.)

Moreover, as the *Johnson* court conceded, a court's interpretation of which decisions are deemed discretionary "will necessitate delicate decisions."

(*Johnson, supra*, 69 Cal.2d at p. 794.) The court elaborated that "the very process of ascertaining whether an official determination rises to the level of insulation from judicial review requires sensitivity to the considerations that enter into it and an appreciation of the limitations on the court's ability to reexamine it." (*Ibid.*) A social worker making a placement decision must consider, among other things, the statutory preference for family placement; the unique needs and challenges of the child to be placed; whether siblings also require a home and, if so, whether the needs of the siblings or the limitations or preferences of the proposed placement will allow joint placement; the available foster homes; the proximity to appropriate services and schools; and considerations related to parental visitation. Following an allegation of abuse in the foster home, the social worker may investigate such things as the allegations, the credibility of the child and other witnesses, and physical evidence. On top of this, the social worker must make a judgment call as to whether erring on the side of removing the child or leaving the child will result in greater harm. The complex and sensitive nature of these considerations favors applying immunity because the court's ability to reexamine and pass judgment on such events, especially when they occurred long ago, would be " 'neither useful nor workable.' " (See *Ronald S., supra,* 16 Cal.App.4th at p. 898.)

This conclusion is bolstered by the similar analysis our high court undertook in *Thompson v. County of Alameda* (1980) 27 Cal.3d 741. There, the county released a violent juvenile offender to his mother's custody, and he promptly murdered the neighbor's young son. (*Id.* at p. 746.) Our high court concluded the county's decision to release the offender, its selection of his mother as the custodian, and its subsequent supervision were immune under

16

sections 820.2 and another section not applicable here. (*Id.* at pp. 747–748.)
It explained that:

> "The discretionary nature of the selection of custodians for potentially dangerous minors and the determination of the requisite level of governmental supervision for such custodians becomes apparent when the underlying policy considerations are analyzed. Choosing a proper custodian to direct the attempted rehabilitation of a minor with a prior history of antisocial behavior is a complex task. [Citations.] The determination involves a careful consideration and balancing of such factors as the protection of the public, the physical and psychological needs of the minor, the relative suitability of the home environment, the availability of other resources such as halfway houses and community centers, and the need to reintegrate the minor into the community. The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of 'discretion' and we conclude that such decisions are immunized under section 820.2." (*Id.* at pp. 748–749.)

We see no discernable difference between the nature of these decisions and the complex one required when reevaluating the continued suitability of a foster home following an abuse allegation.[7]

The more recent decision of *Barner v. Leeds* (2000) 24 Cal.4th 676 does not compel a different result. In Barner a deputy public defender allegedly acted below the standard of care because she failed to investigate exculpatory evidence given by a second confidential informant. (*Id.* at p. 682.) This resulted in a wrongful conviction and incarceration for an innocent defendant. (*Id.* at pp. 681–682.) Our Supreme Court held that decisions of

---

[7]    Plaintiff also argued alternatively that even if Jensen's decision to investigate Plaintiff's allegations was discretionary, his investigation was performed in a negligent manner and, thus, not entitled to immunity. We find it unworkable to subdivide the decision to investigate, the investigation, and the reevaluation of whether the foster placement remains viable. All involve exercising discretion in planning for the protection of the child.

an attorney about how to conduct a case were ministerial, not discretionary and that, therefore, no immunity attached under section 820.2. (*Id.* at p. 691.) It did, however, acknowledge that the initial determination whether to represent a certain class of individuals or a particular defendant might constitute "a sensitive policy decision that requires judicial abstention to avoid affecting a coordinate governmental entity's decisionmaking or planning process." (*Id.* at p. 688.)

Here, both the initial determination of whether Plaintiff's aunt and uncle were a suitable placement and the reevaluation (triggered by Plaintiff's allegations) as to whether the placement remained appropriate, similarly involved sensitive policy decisions that require judicial abstention.

Turning to the second prong discussed in *Johnson*, we consider Plaintiff's assertion that even if we conclude the social worker's actions were discretionary, the County has not shown that " 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages.' " (*Caldwell, supra*, 10 Cal.4th at p. 983 quoting *Johnson, supra,* 69 Cal.2d at pp. 794, 795, fn. 8.) "The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Johnson, supra*, 69 Cal.2d at p. 794, fn. 8.)

In arguing a social worker never made a considered decision, Plaintiff focuses exclusively on Jensen and contends Jensen's testimony shows he did nothing more than speak to Duncan and then rely on the therapist to contact someone if the allegations seemed plausible.[8] She does not factor in her own testimony that "Richard" came to the Cason house to talk to her and that she told him what happened with Cason, or Duncan's testimony that someone

---

[8] Jensen testified he never followed up with the therapist.

from the child protection agency came to talk to her and Plaintiff (Duncan was not positive, but believed Jensen investigated "because that was her social worker"). Plaintiff disputes these facts because Jensen testified that he never visited the home after receiving Plaintiff's report or interviewed Plaintiff.[9]

Nonetheless, even if we infer Jensen was the primary decisionmaker as to Plaintiff's care and disregard Plaintiff's and Duncan's testimony, the record still contains undisputed evidence Jensen made a considered decision. County records reflect three phone conversations between Jensen and Duncan. It is also undisputed that, even after Duncan told the County that Plaintiff recanted, a male social worker told her he would need to continue investigating, and Jensen was Plaintiff's only male social worker. Jensen's contemporaneous notes and his testimony show he discussed the issue with his supervisor, Lorna Grund, before reaching back out to Duncan. Finally, a social worker also called Duncan to ask more questions about Cason's whereabouts at the time of the alleged molestation.

We do not read *Johnson* or *Caldwell* as requiring formal written findings detailing the social worker's balancing of the risks and advantages of leaving the child in the foster placement. The circumstantial evidence here

---

[9] In moving for summary judgment, the County asserted only that "a social worker," not Jensen specifically, visited the foster home to investigate Plaintiff's allegation and interviewed Duncan and Plaintiff. Plaintiff does not address whether other social workers on the case visited the home. Plaintiff's child welfare services records indicate three other social workers were involved in her case, and Plaintiff recalled having a female social worker as well. In disputing these facts, she also claims she told Jensen she was being abused *before* reporting it to her mother or Duncan. The cited testimony does not support this, nor does it matter because the relevant issue is that Plaintiff does not dispute being interviewed at her aunt's house about her abuse allegation.

demonstrates County social workers obtained evidence about Plaintiff's allegations and credibility, represented that they were engaged in an ongoing investigation, discussed the matter internally, and solicited follow-up evidence. It is fair to infer from this evidence that the County was consciously considering whether something happened to Plaintiff that justified removal from the home. That the County generally, or Jensen specifically, could have done more or exhibited bad judgment does not undermine our conclusion that the decision to leave Plaintiff in the home followed an actual exercise of discretion. (See *Caldwell, supra*, 10 Cal.4th at pp. 983–984 ["*Johnson* does not require a strictly careful, thorough, formal, or correct evaluation" because "[s]uch a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy."].)

Nor do we consider this case analogous to *D.G., supra*, 108 Cal.App.5th 465. There, a social worker placed a young child with a foster family, which ultimately adopted him. (*Id.* at pp. 468–469.) As an adult, he alleged the foster father sexually abused him. (*Id.* at p. 469.) He said that when he was about five years old, he repeatedly told his social worker that "bad people were hurting" him and began wetting his bed. (*Id.* at pp. 468–469.) He also presented evidence that another child previously placed in the home reported "he felt 'weird' taking showers with [the foster father] because it was 'yucky.'" (*Id.* at p. 469.) On appeal, the court concluded child welfare employees' decisions regarding child abuse, placement, and removal were discretionary policy decisions, but concluded there was no evidence the social worker actually exercised that discretion. (*Id.* at p. 473 citing *B.H., supra*, 108 Cal.App.5th at pp. 191–192.) It highlighted that the social worker's declaration supporting summary judgment did not mention any of these

20

indicators of possible abuse or indicate she made a judgment call after considering them. (*Id.* at p. 474.) Here, by contrast, there is evidence specifically showing social workers investigated and discussed the abuse allegations before leaving Plaintiff in the foster home.

C.    *Discovery Request*

Even if we conclude the County demonstrated it is entitled to discretionary act immunity, Plaintiffs argues "the motion for summary judgment should be continued and Plaintiff should be allowed to conduct additional discovery pursuant to Code Civ. Pro. § 437c(h)." This section provides that "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." (Code Civ. Proc., § 437c, subd. (h).) Plaintiff requested additional time below to conduct discovery and renews that request on appeal. In particular, she asserts the depositions of assigned social workers Diane Wilkins and Jensen's supervisor, Lorna Grund, along with the County's person most knowledgeable, are necessary "to gather evidence of ministerial acts that were available to the social workers but disregarded, that would have ameliorated and avoided the foreseeable harm to Plaintiff of Cason's sexual abuse." She contends this discovery "is necessary to determine the nature and extent of discretion actually exercised in the course of Plaintiff's supervision and in response to notice of the risk of abuse to Plaintiff."

This request is problematic. First, such requests are properly directed to the trial court. The trial court, in fact, heard and decided this issue.

21

Although we may review such intermediate rulings on an appeal of the final judgment for abuse of discretion (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100), Plaintiff did not argue the court abused its discretion in denying her request. "When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Second, we have not identified any defect in the court's ruling, much less one that would constitute an abuse of discretion. Despite Plaintiff's failure to recite all the facts relevant to her discovery request, the record reflects she did not seek this discovery of known individuals until the case had been pending for nearly three years, and the court had continued the discovery deadline three times. Plaintiff provides no explanation for her delay. Moreover, the County originally filed its summary judgment motion in October 2023, which provided Plaintiff notice of the issues to be raised.[10] Because discovery closed on January 19, 2024[11], Plaintiff had time to obtain this discovery prior to the discovery cutoff or to request relief before the County filed its operative summary judgment motion in March 2024. There is dispute among the Courts of Appeal as to whether an affidavit supporting a continuance must demonstrate that the party was diligent in attempting to

---

[10]  The County included a declaration from Jensen with this motion. Plaintiff repeatedly references statements from this declaration. However, because the County withdrew all the moving papers, it is not part of the record, and we have not considered it.

[11]  Plaintiff repeatedly listed August 29, 2024, as the discovery cutoff in her summary judgment briefing below, but she provided no scheduling order or other evidence indicating the court modified the scheduling order contained in the record, which lists January 19, 2024, as the discovery cutoff.

obtain the discovery. (Compare *Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 156 (*Braganza*) [party "must show why the discovery necessary to oppose the motion for summary judgment . . . could not have been completed sooner"] with *Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020) 49 Cal.App.5th 506, 519–520 [finding "court's discretion to deny a continuance is strictly limited" where party not diligent but discovery remained open, no trial date had been set, and no prior continuances had been sought or granted].) But, at the very least, some showing of excusable neglect appears necessary. (See *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 399–400.) Plaintiff did not present argument supporting such a theory.

Third, the affidavit supporting the request must show, among other things, that there is reason to believe such facts may exist. (*Braganza, supra*, 67 Cal.App.5th at p. 152.) The County pointed out in response to the affidavit that "a quick google search confirms Lorna Grund died over eighteen years ago."[12] It also explained that it first notified Plaintiff on January 10, 2024, that the County did not have a person most knowledgeable on the noticed deposition topics because it had no current employee who worked for the County during the designated 1986–1992 period. Plaintiff's counsel did not follow up on its person most knowledgeable deposition request before discovery closed and did not address either of these issues in her May 2024 declaration. Finally, Plaintiff states in opposing the County's evidence that Diane Wilkins was assigned to Plaintiff's case in 1991, which was after Plaintiff testified the alleged abuse stopped. Thus, Plaintiff has not

_____

[12]    Apparently realizing this error, despite the County having highlighted it previously, Plaintiff states for the first time in her reply brief on appeal that she instead needs to depose Barbara Norton.

23

demonstrated there is reason to believe the evidence she seeks can be obtained or that the court abused its discretion.[13]

### III.  DISPOSITION

The judgment is affirmed.  The County is entitled to its costs on appeal.


RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.

---

[13]    Because we conclude the County is entitled to discretionary act immunity and that no continuance for additional discovery is warranted, we need not address the County's further argument that Plaintiff's claim is barred by the applicable statute of limitations.